**Roosevelt BRANDON, Plaintiff,**

v.

**DISTRICT OF COLUMBIA BOARD OF PAROLE, et al., Defendants.**

Civ. A. No. 83–0007.

United States District Court, District of Columbia.

March 28, 1986.

John H. Suda, Acting Corp. Counsel, D.C., Martin L. Grossman, Deputy Corp. Counsel, D.C., Civil Div., Cary D. Pollak, Chief, General Litigation Section III, Civil Div., and Karen Dworkin by Kathleen A. Carey, Asst. Corp. Counsel, D.C., Washington, D.C., for defendants.

Peter A. Barnes and Donna E. Patterson, Hughes, Hubbard & Reed, Washington, D.C., for plaintiff.

## OPINION AND ORDER

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

The Court has before it cross motions for summary judgment and the oppositions and replies thereto. Plaintiff in the above-entitled action is a prisoner at Lorton Reformatory presently serving a ten to thirty year consecutive sentence for a charge of rape while armed. Prior to this, he was sentenced to a term of ten to thirty years for second degree murder and served nine years before being paroled.

Originally, plaintiff filed his complaint *pro se.* Another deceased member of this Court dismissed the complaint *sua sponte.* The Court of Appeals, 734 F.2d 56 (D.C.Cir. 1984), reversed the *sua sponte* dismissal and remanded the case to this Court. Counsel was appointed *pro bono publico,* and an amended complaint and petition for habeas corpus was subsequently filed.

Plaintiff alleges in his Amended Complaint and Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241 (1982) that defendants violated his Due Process and Equal Protection Rights under the Fifth Amendment of the Constitution. Plaintiff further contends that the actions of the Parole Board violated 42 U.S.C. § 1983, and, prior to the application of 42 U.S.C. § 1983 to the District of Columbia, the principles set forth in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Plaintiff requests that the Court (1) declare that defendants violated his Due Process and Equal Protection Rights; (2) order the defendants to amend the plaintiff's Certificate of Parole; (3) award general damages of $200.00; and (4) award attorney's fees and costs.

Upon consideration of the briefs, argument of counsel, the administrative record, the declarations, and depositions in evidence, the Court finds that it must grant defendants' Motion for Summary Judgment and deny plaintiff's Cross Motion. In so doing, the Court, with the consent of both sides, has resolved any issues of fact in accordance with the agreement of the attorneys at the Summary Judgment hearing on October 2, 1985.

## BACKGROUND

Plaintiff, Roosevelt Brandon, pled guilty to second degree murder on January 20, 1966. In April of that year, he was sentenced to ten to thirty years in prison. After serving nearly nine years at Lorton Reformatory, the plaintiff was paroled in April, 1975. Seven months later, plaintiff was arrested and charged with rape while armed. Subsequently, his parole was revoked in February of 1976; he was sentenced to ten to thirty years in April, 1976. This sentence was to run consecutively to his prior sentence for second degree murder.

In November, 1976, the plaintiff was scheduled for a parole hearing. However, the Parole Board continued his hearing date because his presentence report was unavailable. In January, 1977, the Board of Parole held a hearing and denied reparole. Again, in October, 1977, reparole was denied, but this time the Board of Parole requested a Forensic Psychiatric Office evaluation. According to the Chairperson of the Board of Parole, it was the Board's policy during these years to require a Forensic Psychiatric Office report for any person, such as the plaintiff, convicted of a violent crime. *Just Deposition* at 59. In May, 1978, plaintiff had a single consultation with the staff clinical psychologist who

determined that he needed more data to assess the plaintiff's psychiatric needs.

In February, 1979, the Board held another reparole hearing. However, this hearing was continued pending the completion of the psychiatric report requested in October, 1977. In April, 1979, the plaintiff was examined by a psychiatrist, Dr. Mould, who referred the plaintiff to the psychiatric clinic. The plaintiff began psychotherapy four months later.

In November, 1979, the Classification Board at the District of Columbia Correctional Complex recommended that the plaintiff be reparoled to his consecutive term because of the gains he had made in the program and in his psychiatric counselling. On February 1, 1980, the plaintiff was reparoled to his consecutive sentence.

## PLAINTIFF MUST HAVE A PROTECTED LIBERTY INTEREST FOR DUE PROCESS TO APPLY

■ Due process analysis begins with an inquiry as to whether the government's action deprived the plaintiff of a constitutionally protected interest in life, liberty, or property. *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979); *Baumann v. Arizona Dep't of Corrections,* 754 F.2d 841, 843 (9th Cir. 1985); *see* U.S. Const. amend. V. Only after the plaintiff has shown that a constitutionally protected interest is involved will a court examine what process was due. It is axiomatic that due process is not implicated every time an individual suffers a "grievous loss" because of some government action. *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976), *quoted in Baumann,* 754 F.2d at 843. Moreover, an individual must have more than an unilateral expection; he must have a "legitimate claim to entitlement." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), *quoted in Greenholtz,* 442 U.S. at 7, 99 S.Ct. at 2104. Here the plaintiff must establish that he has a protected liberty interest in reparole for the Due Process Clause to apply. For the reasons set forth below the Court finds that the plaintiff does not have a protected liberty interest.

## PLAINTIFF DOES NOT HAVE A LIBERTY INTEREST IN REPAROLE

■ Liberty interests may arise under the Constitution or through state statutes or regulations imposing "substantive limitations" on official discretion. *Baumann,* 754 F.2d at 844; *see Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983); *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 465–67, 101 S.Ct. 2460, 2464–66, 69 L.Ed.2d 158 (1981). As the Supreme Court has stated unequivocally in *Greenholtz,* "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz,* 442 U.S. at 7, 99 S.Ct. at 2104. Since the Constitution does not afford the plaintiff a liberty interest in parole or reparole, he must look to the statutes and regulations of the District of Columbia for such an interest.

■ A state may create a liberty interest in parole under certain conditions. *See Greenholtz,* 442 U.S. at 11–12, 99 S.Ct. at 2105–06. However, the mere existence of a parole system and the *possibility* of parole are not enough to implicate due process considerations. *See id.* at 11, 99 S.Ct. at 2105–06; *Boothe v. Hammock,* 605 F.2d 661, 663 (2d Cir.1979). *Cf. Dumschat,* 452 U.S. at 467, 101 S.Ct. at 2465–66. To establish that he had a liberty interest in reparole, the plaintiff must show that the District of Columbia Board of Parole was required to follow "particularized standards or criteria" in its decisionmaking. *See Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) (quoting *Dumschat,* 452 U.S. at 467, 101 S.Ct. at 2466); *Baumann,* 754 F.2d at 844

■ In *Greenholtz,* the Supreme Court held that the Nebraska state statute created a liberty interest in parole. That statute provided that the parole board "shall"

grant parole "unless" the board found that it should be denied for one of the four reasons enumerated in the statute. Neb. Rev.Stat. § 83–1,114(1) (1976). The statute also provided 15 factors that the board was *obligated* to consider when making a parole decision. Neb.Rev.Stat. § 83–1,114(2)(a)– (n) (1976). The Court emphasized that the statute's "unique structure and language" created an expectancy of release and this expectancy was entitled to some constitutional protection. *Greenholtz,* 442 U.S. at 12, 99 S.Ct. at 2106.

Since the *Greenholtz* decision, the circuit courts, with one exception, have either required the specific "shall/unless" language or other mandatory language comparable to that found in the Nebraska statute. See *Baumann,* 754 F.2d at 845 (Arizona statute has no mandatory language comparable to the standard in *Greenholtz,* and thus, plaintiff had no constitutionally protected liberty interest in work release or home furlough.); *Slocum v. Georgia State Bd. of Pardons and Paroles,* 678 F.2d 940, 941 (11th Cir.) *cert. denied,* 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 612 (1982) (Georgia statute had no "scheme that requires release 'unless adverse findings based on [specific] criteria are made'" thus there was no protected liberty interest.); *Candelaria v. Griffin,* 641 F.2d 868, 870 (10th Cir.1981) (Here the plaintiff alleged that he was denied due process when the parole board failed to give him a psychiatric evaluation. The court held that the New Mexico statute contained discretionary language and no "shall/unless" directive and did not create a liberty interest in parole.); *Williams v. Briscoe,* 641 F.2d 274, 276–77 (5th Cir.) *cert. denied,* 454 U.S. 854, 102 S.Ct. 299, 70 L.Ed.2d 147 (1981) (Texas statute authorizes the parole board to grant parole at its discretion, and thus does not create a liberty interest.); *Boothe,* 605 F.2d at 664 (New York statute does not establish a scheme where parole is required unless certain conditions are met.).

Like the statutes in the above-cited cases, the relevant District of Columbia statute grants the Board of Parole discretionary power to parole inmates. D.C.Code § 24–204(a) (1973). It states in part:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board *may authorize his release on parole* upon such terms and conditions as the Board shall from time to time prescribe. D.C.Code § 24–204(a) (1973) (emphasis added)

The statute contains no mandatory language requiring the Parole Board to release inmates. Moreover, the statute provides the Board broad discretion as to when an inmate is eligible for parole. There are no explicit written pronouncements in the statute which would create a liberty interest in parole.

Plaintiff argues that the statute, the District of Columbia Rules and Regulations, 9 D.C. R & Regs. tit. 9, §§ 105–.01 (1972), and the practices of the Board created a liberty interest in parole. The Court cannot agree. Sections 105 and 105.01 of the Rules and Regulations state that release on parole is not mandatory and enumerate some of the factors that the Board takes into account when making a parole decision. There is no language mandating the Board to make its decision based solely on these factors. Section 105.1 merely lists the factors and does not require an inmate's release if certain criteria are met. *See* D.C. R. & Regs. tit. 9, § 105.1 (1972). These factors are merely guidelines and while the "guidelines are used to structure the exercise of discretion, no entitlement to release is created." *Boothe,* 605 F.2d at 664.

Moreover, creation of a liberty interest would be clearly contrary to the express intent of the drafters of the parole regulations. Section 105 states that "[t]he granting of a parole is neither a constitutional *[n]or statutory requirement,* and release to parole supervision by Board action *is*

*not mandatory.*" D.C. R. & Regs. tit. 9, § 105 (1972) (emphasis added).

Plaintiff's reliance on the official policies and practices of the Board of Parole to create a liberty interest also fails. He contends that the Board's requirement that an inmate attend his or her parole hearing, the unwritten policy of requiring a psychiatric evaluation before the Board would consider an inmate convicted of a violent crime for parole, and the alleged practice of reparoling inmates to a consecutive sentence within 24 months create a liberty interest.

Plaintiff's argument that requiring the inmate to be present at the parole hearing creates a liberty interest is unfounded. Before establishing what procedures are necessary to comply with due process, there must be a liberty interest. The procedures themselves do not create such an interest. "Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness." *Slocum,* 678 F.2d at 942.

Furthermore, the Court finds that these regulations, practices, and policies do not create the requisite specific criteria for parole. *See Winsett v. McGinnes,* 617 F.2d 996, 1007 (3d Cir.1980) (There must be policies and practices which create specific criteria for determining work release eligibility, and official discretion must be exercised consistent with the purpose of work release.); *Lucas v. Hodges,* 730 F.2d 1493, 1505 (D.C.Cir.), *vacated as moot,* 738 F.2d 1392 (D.C.Cir.1984) ("The key to determining whether the state has created a liberty interest giving rise to a due process claim is whether it has set out explicit substantive criteria on which the decisionmaker must base the imposition of restrictions or the withholding of benefits.").

Moreover, the administrative record here indicates that the Board exercised its discretion consistent with the purpose of parole and reparole. The purpose of parole is to release inmates who have a "reasonable probability" of remaining at liberty without violating the law and whose release must not be incompatible with the welfare of society. *See* D.C.Code § 24–204 (1973). The psychiatric evaluation prepared in April, 1979 states that the plaintiff is a "seriously disturbed" man who is not ready for parole. In an earlier parole hearing memorandum, the Board indicated that the plaintiff had two disciplinary reports and failed to involve himself in the academic program or make significant overall progress. These reports supplied sufficient reasons for the Board to deny reparole and are consistent with the overall purpose of the District of Columbia parole system.

Finally, plaintiff has not established that the Board of Parole had a policy of releasing inmates to a consecutive sentence within 12 months of their parole revocation. The former chairperson of the Board asserted that the policy was to hold a reparole *hearing* within 12 months of parole revocation. *See Just Deposition,* at 43. Her interpretation of the policy is supported by the Department of Corrections Manual of Social Service Operations and Procedures, which states that rehearings in the case of a parole violator "having more than five years remaining ... will ordinarily be held one year from the last action taken by the Board." Manual of Social Services Operations and Procedures § X–11 (revised 1978). Given these facts, which the Court accepts and finds credible, the Court holds that the Board had a rehearing policy but did not have a policy of automatically releasing parole violators to consecutive sentences within 12 months of their revocation.

For the above-stated reasons, the Court concludes that the statutes, regulations, policies, and practices of the District of Columbia Board of Parole do not create a liberty interest in reparole. Consequently, there is no basis for the plaintiff's due process claims in this case.

## DEFENDANT'S ACTIONS DID NOT VIOLATE THE PLAINTIFF'S EQUAL PROTECTION RIGHTS

Principles of equal protection are incorporated in the Due Process Clause of

the Fifth Amendment and are applicable to the District of Columbia. *Bolling v. Sharpe*, 347 U.S. 497, 498, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954); *see Brandon v. District of Columbia Bd. of Parole*, 734 F.2d 56, 60 (D.C.Cir.1984) *cert. denied,* — U.S. ——, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985). Plaintiff has not alleged that he is a member of any suspect class. Therefore, equal protection requires that "a classification between similarly situated individuals bear some rational relationship to a legitimate state purpose." *Brandon*, 734 F.2d at 60 (citing *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981)); *Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir.1978) *cert. denied,* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979). Even if the plaintiff's allegations that he was treated differently than other inmates are true, the Board of Parole had a rational basis related to legitimate state interests for such treatment. This rational relationship is all that equal protection requires. The law is well settled that equal protection does not require absolute equality or "precisely equal advantages." *French v. Heyne*, 547 F.2d 994, 997 (7th Cir.1976).

The plaintiff came before the Board of Parole for reparole after committing his second serious crime, rape while armed. This second offense, strongly indicated that plaintiff was not rehabilitated and required incarceration. As set forth above, the Board denied reparole until the plaintiff began making substantial institutional progress. These denials certainly served the District of Columbia's interest in rehabilitating criminals and protecting the public welfare.

Plaintiff argues that had he been evaluated earlier by the psychiatrist, he would have entered psychotherapy sooner, made progress in treatment faster, and been reparoled at an earlier date. This is sheer speculation. The psychiatric report and the summaries of the parole hearings indicate that the plaintiff was a seriously disturbed man with little motivation to participate in academic programs. Even if the plaintiff had entered psychotherapy earlier it is impossible to know how long it would have

taken for him to respond to treatment. Even those members of the parole staff who recommended plaintiff's reparole at an earlier date stated that he had not complied with the program requirements and that there was scant evidence to support a recommendation for reparole.

In light of the evidence in the administrative record, the Court finds that the defendants had more than ample reason for not reparoling the plaintiff, and these reasons furthered the legitimate interests of the District of Columbia in operating a secure prison system which served to rehabilitate inmates and protected the general public welfare. Thus, the plaintiff's equal protection claim must be denied.

## CONCLUSION

In conclusion, the plaintiff does not have a liberty interest in reparole and the defendants have not violated his rights to equal protection of the law under the Constitution. For these reasons, the Court must grant the defendants' Motion for Summary Judgment and deny the plaintiff's Cross-Motion. An Order in accordance with the foregoing shall issue of even date herewith.

Counsel for the plaintiff and the defendants have the appreciation and respect of the Court for their competent and highly professional work on this case. Plaintiff's *pro bono* counsel are hereby discharged from further responsibility or work in the premises, in that, their task has been completed.

## ORDER

The Court has before it Cross-Motions for Summary Judgment, Oppositions filed by respective counsel, and Replies thereto. Upon consideration thereof, including able oral argument by counsel in addition to the reasons set forth in the Court's Opinion of even date herewith, the Court finds that the defendants are entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 56, and, thus, their motion must be grant-

ed. Accordingly, it is, by the Court, this 28th day of March, 1986,

ORDERED, that the plaintiff's motion for summary judgment be, and hereby is, denied; and, it is,

FURTHER ORDERED, that the defendants' motion for summary judgment be, and hereby is, granted; and, it is,

FURTHER ORDERED, that the above-entitled cause shall stand dismissed from the docket of this Court.

## ORDER

The Court has before it the plaintiff's Motion for Sanctions pursuant to Fed. R.Civ.P. 37(d) and the defendants' Opposition thereto. Plaintiff avers that the defendants failed to produce requested documents in a timely manner and requests that the Court direct the defendants not to use any documents produced after July 12, 1985 in support of their summary judgment motion or their opposition to the plaintiff's motion. Plaintiff also requests that the defendants be ordered to pay $750 for the costs of the motion.

Defendants apparently were unaware of the files and documents in question until after certain interviews and depositions were taken. In view of the result herein, and the Court's being thoroughly familiar with the record, and by virtue thereof, the Court finds that the failure to produce documents had no effect on the outcome of the above-entitled case, and while it, perhaps, resulted in some inconvenience to counsel for the respective parties, and while such delays are not generally tolerated by the Court, it is, in this instance, upon considered reflection, consistent with the ends of justice, and that all the circumstances of record, herein, would make an award unjust.

In view of the foregoing, it is, by the Court, this 28th day of March, 1986,

ORDERED, that the plaintiff's Motion for Sanctions for failure to produce requested documents in a timely manner be, and the same hereby is, denied.