Roosevelt BRANDON, Appellant,

v.

**DISTRICT OF COLUMBIA BOARD OF PAROLE.**

No. 86–5268.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 10, 1987.

Decided July 21, 1987.

John D. Echeverria (Appointed by this Court), with whom Peter A. Barnes, Wash-

ington, D.C., (Appointed by this Court) was on the brief for appellant.

Edward E. Schwab, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel, at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief for appellee. John H. Suda, Acting Corp. Counsel, Washington, D.C., entered an appearance for appellee.

Before MIKVA, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Appellant Roosevelt Brandon claims that the delay of the District of Columbia Board of Parole (the Board) in granting his application for reparole violated his due process and equal protection rights. On cross-motions for summary judgment, the district court granted appellees' motion and dismissed Brandon's complaint. The court held that there was no basis for Brandon's due process claims because he had no liberty interest in reparole. The court further held that the Board had not violated Brandon's constitutional right to equal protection of the law. We affirm.

## I. BACKGROUND

In 1966, Brandon pleaded guilty to second-degree murder and was sentenced to a term of ten to thirty years. He was paroled in April of 1975. On November 11, 1975, while on parole, Brandon was arrested and charged with armed rape. As a result, the Board revoked Brandon's parole. Shortly thereafter, appellant pleaded guilty to the armed rape charge and received another sentence of ten to thirty years, to be served consecutively to his prior murder sentence. Brandon thus could not begin serving his second term until he had either served out his time or been reparoled on the first conviction.

Brandon came before the Board five times before he was finally granted reparole on his murder conviction; he was paroled not to the community but to begin serving his second sentence. The Board continued Brandon's first scheduled parole hearing in November of 1976 because the presentence report on his second conviction was not available; then, in an order issued on January 24, 1977, the Board denied Brandon's reparole application without a statement of reasons. In October of 1977, Brandon again appeared before the Board, which denied reparole because of Brandon's failure to involve himself fully in institutional academic and vocational programs. The Board requested the Forensic Psychiatry Office to conduct a psychiatric evaluation of Brandon prior to his next parole rehearing. No forensic psychiatry evaluation was performed between this request and Brandon's next reparole hearing in September of 1978. In denying appellant reparole for a third time, the Board explained that Brandon still refused to become involved in institutional programs. In February 1979, Brandon once again appeared before the Board. At this, Brandon's fourth parole hearing, the Board expressed concern about appellant's continued failure to participate in academic programs and vocational training. It also found that it lacked sufficient psychiatric information and therefore continued the hearing pending completion of the evaluation it had requested a year and a half earlier. In April of 1979, a physician from the Forensic Psychiatry Office examined Brandon, found him to be seriously disturbed, and recommended that reparole be denied and that appellant be admitted to a clinic. Acting on this recommendation, the Board denied reparole for the fourth time in May. Brandon began psychotherapy in August of 1979 and was granted reparole ten months later in February of 1980, 51 months after his parole had been revoked.

During the period in question, the unwritten policy of the Board was to request the Forensic Psychiatry Office to evaluate persons convicted of violent crimes before making a decision to grant parole to such inmates. In Brandon's case, the Board did not request a psychiatric evaluation until October of 1977, and the evaluation was not completed until April of 1979, 38

months after Brandon's parole had been revoked. Throughout this same period, the Board's procedural regulations provided that the Board would ordinarily afford reparole hearings to parole violators, like Brandon, who had more than five years remaining to be served, within twelve months of their parole revocation. Brandon's first reparole hearing was held approximately twelve months after the revocation of his parole on his first conviction.

After the Board finally granted his application for reparole, Brandon filed a complaint *pro se* in the district court, challenging the Board's delay. Brandon alleged that the failure to reparole him before 1980 departed from the Board's rules, regulations, and policies. He asserted that the Board would have reparoled the average parole violator to a consecutive sentence within twenty-four months of his parole revocation, whereas he had been subjected to a four-year wait. He sought amendment of his Certificate of Reparole to reflect reparole after twenty-four months. Such an amendment would have shortened the time he served for murder by two years and three months and credited that time against the service of his armed rape sentence. Brandon also sought punitive and compensatory damages against the Board members.

The district court dismissed the complaint sua sponte, and this court reversed. *See Brandon v. District of Columbia Board of Parole,* 734 F.2d 56 (D.C.Cir. 1984), *cert. denied,* 469 U.S. 1127, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985). We concluded that when construed under the liberal rules applicable to *pro se* pleadings, Brandon's complaint stated procedural due process claims as well as claims under equal protection principles. In remanding the case to the district court, we noted that Brandon's due process claims raised "substantial issues of first impression in this circuit," principally whether the District of Columbia parole system creates a liberty interest in parole release. *Id.* at 61.

On remand, the district court appointed counsel who subsequently filed an amended complaint and a petition for habeas cor-

pus. In his amended complaint and petition, Brandon alleged that the Board had violated his due process and equal protection rights under the Fifth Amendment of the Constitution. Appellant further contended that the actions of the Board violated 42 U.S.C. § 1983 and, prior to the statute's application to the District of Columbia, the principles set forth in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Specifically, Brandon argued that he had a liberty interest in reparole of which he was improperly deprived by the Board's failure to obtain a forensic evaluation in a timely fashion and by the Board's failure to grant reparole within two years, both of which allegedly diverged from Board policy and practice. Brandon further alleged that these same failures constituted a denial of equal protection of the law. In his prayer for relief, appellant again sought amendment of his Certificate of Parole.

Upon consideration of the record, and in reliance on the parties' stipulation of facts, the district court granted the Board's motion for summary judgment and denied Brandon's cross-motion. *See Brandon v. District of Columbia Board of Parole,* 631 F.Supp. 435 (D.D.C.1986). The court first examined Brandon's due process claim, which the court determined hinged on Brandon's ability to establish a protected liberty interest in reparole. The court noted that although the Constitution does not afford prisoners a liberty interest in parole or reparole, a state may create such a liberty interest if its parole system created an expectancy of release. *See id.* at 438 (citing *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)). After careful examination, the court concluded that "the statutes, regulations, policies, and practices of the District of Columbia Board of Parole do not create a liberty interest in parole." *Brandon,* 631 F.Supp. at 440. Consequently, the court held that "there is no basis for the plaintiff's due process claims in this case." *Id.* Turning to Brandon's equal protection claim the court held that even if appellant's allega-

tions that he was treated differently from other inmates were true, Brandon's criminal record and lack of institutional progress gave the Board "more than ample reason for not reparoling [Brandon], and these reasons furthered the legitimate interests of the District of Columbia in operating a secure prison system which served to rehabilitate inmates and protecting the general public." *Id.* at 441. Accordingly, the court held that the Board had not violated Brandon's right to equal protection of the law. This appeal followed.

## II. DISCUSSION

### A. *Brandon's Due Process Claim*

■ Not all interests are protected by the Due Process Clause's prohibition on governmental deprivation of an individual's life, liberty, or property without due process of law. To ascertain whether governmental action affecting an individual's interest is violative of this provision, the court must first inquire whether the nature of the interest is within the contemplation of the Constitution's "liberty or property" language. *See Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). A protectible liberty interest may arise from two sources—the Due Process Clause itself or the laws of the states. *See Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983) (citing *Meachum v. Fano*, 427 U.S. 215, 223–27 96 S.Ct. 2532, 2537–39, 49 L.Ed.2d 451 (1976)). The Supreme Court has held that there is no constitutional right to parole that automatically invokes due process protection. *See Greenholtz*, 442 U.S. at 7, 99 S.Ct. at 2103. Thus, the presence of a parole system does not by itself give rise to a constitutionally protected liberty interest in parole release. *See Board of Pardons v. Allen*, —— U.S. ——, ——, 107 S.Ct. 2415, 2417, 96 L.Ed.2d 303 (1987). The Supreme Court has acknowledged, however, that a state's parole-determination provisions may create an expectation of parole entitled to some measure of constitutional protection. *See Greenholtz*, 442 U.S. at 11–12, 99 S.Ct. at 2105–06 (finding that Nebraska parole statute created

protectible liberty interest in parole); *see also Allen, supra* (finding a liberty interest protected by the Due Process Clause in the Montana parole statute). Since *Greenholtz*, courts have examined the parole systems of numerous states to discern whether the respective parole-determination provisions place sufficient limitations on the state's discretion so as to engender a constitutionally protected liberty interest. *See Allen*, —— U.S. at —— n. 10 107 S.Ct. at 2421 n. 10 (listing Court of Appeals' decisions which analyze the parole systems of twenty states). With its decision below, the district court entered the District of Columbia's parole system into the fray for the first time.

Brandon expressly states that he does not challenge the district court's holding that District of Columbia law and the Board's regulations, policies, and practices do not create a protected liberty interest in parole or reparole release; that is, Brandon does not claim to have a substantive interest in reparole entitled to due process protection. Instead, Brandon maintains that he has a constitutionally protected interest in having the Board adhere to its own procedures for parole consideration. Brandon claims that District of Columbia law creates a protectible liberty interest in a meaningful annual reparole hearing. For a hearing to be meaningful, according to Brandon, there must exist the possibility that reparole can be granted. Brandon contends that, pursuant to Board practice and policy, the Board would not consider a grant of reparole to an inmate in his record of violent crimes without having first received a forensic psychiatric report. Accordingly, he asserts that the Board's 38–month delay in obtaining the necessary evaluation deprived him of his right to a meaningful parole hearing during that period and therefore violated his right to due process.

■ It is unclear whether Brandon articulated this theory below. To the extent the district court can be understood to have responded to it, the court firmly rejected the notion that the parole-determination procedures themselves created a protecti-

ble liberty interest. *See Brandon,* 631 F.Supp. at 440 (citing *Slocum v. Georgia State Bd. of Pardons & Paroles,* 678 F.2d 940, 942 (11th Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 612 (1982)). We agree. Appellant's claim that he has a constitutionally protected liberty interest in a reparole hearing and thus a due process right to have the Board adhere to its regulations lacks support in law or logic; indeed, it is "analytically indefensible." *Shango v. Jurich,* 681 F.2d 1091, 1100 (7th Cir.1982). *See also Bills v. Henderson,* 631 F.2d 1287, 1298–99 (6th Cir.1980).

■ Process only assumes significance in a context. The notion that naked process itself takes on constitutional dimensions has most troublesome implications. Courts have explicitly and repeatedly rejected the proposition that an individual has an, interest in a state-created procedural device, such as a hearing, that is entitled to constitutional due process protection. The Supreme Court itself has recognized that "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona,* 461 U.S. 238, 250 n. 12, 103 S.Ct. 1741, 1748 n. 12, 75 L.Ed.2d 813 (1983) (citing other courts which have held the same). In *Olim,* the Court found that Hawaii's prison regulations did not create a constitutionally protected liberty interest in a prisoner's remaining in the prison to which he was initially assigned because prison officials retained unfettered discretion to transfer an inmate. *Id.* at 248–50, 103 S.Ct. at 1746–47. The Court then addressed the issue of whether the fact that the prison regulations required a particular kind of hearing before an inmate's transfer created a protected liberty interest. The Court stated that

"[a] liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality." Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of sub-

stantive rights, of course, but in making that choice the State does not create an independent substantive right.

*Id.* at 450–51 (quoting *Shango,* 681 F.2d at 1100–01) (citations and footnotes omitted); *accord Hewitt,* 459 U.S. at 471, 103 S.Ct. at 871. As other circuits have found, the mere fact that the government has established certain procedures does not mean that the procedures thereby become substantive liberty interests entitled to federal constitutional protection under the Due Process Clause. *See, e.g., Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 58 (2d Cir.1985); *Velasco-Gutierrez v. Crossland,* 732 F.2d 792, 798 (10th Cir.1984); *Harris v. McDonald,* 737 F.2d 662, 665 (7th Cir.1984). We find that appellant's argument on appeal must fall to the overwhelming logic of the Supreme Court's pronouncement in *Olim* and the plethora of caselaw against him.

The Due Process Clause ensures that the government does not arbitrarily deprive an individual of liberty for requiring that any deprivation be effected pursuant to constitutionally adequate procedures. An essential principle of due process is that a deprivation of liberty "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). This requirement for "some kind of a hearing," *Board of Regents v. Roth,* 408 U.S. 564, 570 n. 7, 92 S.Ct. 2701, 2705 n. 7, 33 L.Ed.2d 548 (1972), highlights the untenability of Brandon's claim. If, as Brandon argues, a right to a parole hearing is a liberty interest, and since due process accords the right to a predeprivation hearing, then Brandon would have us interpret the Due Process Clause to mean that the Board may not deprive him of his parole hearing without providing him a hearing. This circular result demonstrates the illogic of attempting to locate a separated protected liberty interest in procedural rules created by governmental bodies.

■ In fact, Brandon asks us to abandon altogether the standard due process analy-

sis. Instead of identifying the substantive interest entitled to constitutional protection and then determining what process is due before an individual can be deprived of that interest, *see Morrissey,* 408 U.S. at 481, 92 S.Ct. at 2600, Brandon would have us equate the process due with the substantive interest. That is, Brandon claims that the process to which he is constitutionally entitled is his original procedural expectation—the hearing afforded him under Board regulations. If Brandon's approach were adopted, there would be a constitutional procedural due process right to have states adhere to any procedural rules promulgated by them. Although equal protection principles require states to apply their laws rationally and nonarbitrarily, as discussed further below, a state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures. *See Naegele Outdoor Advertising Co. v. Moulton,* 773 F.2d 692, 703 (6th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1639, 90 L.Ed.2d 184 (1986); *Shango,* 681 F.2d at 1101. *See also United States v. Caceres,* 440 U.S. 741, 749–55, 99 S.Ct. 1465, 1470–73, 59 L.Ed.2d 733 (1979) (in the federal agency context, not every agency failure to follow its own procedures implicates the Due Process Clause). We join our sister circuits in declining to so expand the reach of procedural due process.

Appellant protests that our holding today offends the pre-*Greenholtz* decision of this court in *Childs v. United States Parole Board,* in which we found that procedural due process protections apply to the parole release decision. *See Childs,* 511 F.2d 1270, 1278 (D.C.Cir.1974). The issue in *Childs* was whether the United States Board of Parole had denied a number of federal prisoners' applications for parole in violation of their rights to due process of law. Based on the Supreme Court's decision in *Morrissey,* in which the Court held that the revocation of parole must be accompanied by certain minimum due process safeguards, we determined that parole release was a liberty interest entitled to due process protection. *See Childs,* 511 F.2d at 1277–81. *But see id.* at 1287–88 (Leven-

thal, J.) (concurring in the judgment on statutory grounds, but expressing opinion that mere presence of parole system does not automatically implicate constitutional due process protections). This holding was effectively overruled by *Greenholtz;* the Court explicitly declined to extend *Morrissey* to the parole release decision. *See Greenholtz,* 442 U.S. at 9–11, 99 S.Ct. at 2104–05. Brandon's reliance on *Childs* is therefore misplaced.

In sum, we hold that the procedures adopted by the state to guide its parole release determinations are not themselves liberty interests entitled to constitutional due process protection. Brandon does not have a constitutionally protected interest in having the Board adhere to its procedural requirements. Thus, even if the Board failed to comply with its regulations with regard to the conduct of his reparole hearings, as Brandon alleges, that failure did not violate Brandon's federal constitutional right to due process of law. Such state procedural requirements must be enforced in state courts under state law. *See Boothe v. Hammock,* 605 F.2d 661, 664–65 (2d Cir.1979). *Cf. Helms,* 459 U.S. at 471, 103 S.Ct. at 871 ("The adoption of ... procedural guidelines [to channel the decision-making of prison officials] without more, suggests that it is these restrictions alone, and not those [that] federal courts might also impose under the [Due Process Clause], that the State chose to require."); *Greenholtz,* 442 U.S. at 5 n. 2, 99 S.Ct. at 2103 n. 2 (suggesting that inmates could seek relief under state law for Board of Parole's departures from standard practice). We decline to "federalize"—indeed, "constitutionalize"—every deviation from state procedures.

Having reached this conclusion, we note again that Brandon has not asked this court to review the district court's determination that the District of Columbia's parole system does not create a protectible liberty interest in parole release or reparole. Nor have we undertaken that task. Accordingly, our decision today should not be understood as expressing an opinion on the merits of that aspect of the district

court's decision. We turn next to the other claim that Brandon premises on the Board's alleged failure to adhere to its own procedures and policies—the violation of the equal protection clause of the Fifth Amendment.

### B. *Brandon's Equal Protection Claim*

■ The equal protection principles embodied in the Due Process Clause of the Fifth Amendment essentially direct "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). These principles demand, at a minimum, that a municipality apply its laws in a rational and nonarbitrary way; the unequal application of a law, fair on its face, may act as denial of equal protection. *See Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886); *Zeigler v. Jackson,* 638 F.2d 776, 779 (5th Cir.1981). However, not every divergence in the application a law gives rise to an equal protection claim. *See Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1943). "The unlawful administration by [government] officers of a [law] fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Id.; see Ciechon v. City of Chicago,* 686 F.2d 511, 522–23 (7th Cir. 1982). Further, where, as here, no suspect class or fundamental right is implicated, the government may avoid violating equal protection principles if it can demonstrate that its reasons for treating an individual differently bear some rational relationship to a legitimate state purpose. *See Brandon,* 734 F.2d at 60 (citing *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981)). *See also Vance v. Bradley,* 440 U.S. 93, 96–97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979); *San Antonio School District v. Rodriguez,* 411 U.S. 1, 44–47, 93 S.Ct. 1278, 1302–04, 36 L.Ed.2d 16 (1973).

On appeal, Brandon concedes that his criminal record could have provided a rational basis for delaying his reparole when (according to Brandon) other prisoners in his circumstances would have been granted reparole within twenty-four months of parole revocation, and admits that the Board's reasons furthered legitimate governmental interests. Appellant does not challenge that portion of the district court's decision. Rather, Brandon claims that the district court failed to address his claim that he was deprived of equal protection because the Board denied him a meaningful opportunity for reparole consideration for 38 months by failing to obtain the forensic psychiatric evaluation, in violation of the Board's own regulations and policy. Brandon alleges that the Board purposefully singled him out for harsher treatment than that accorded to similarly situated prisoners. Brandon contends that the nature of his criminal record could not provide a rational basis for depriving him of the timely, meaningful reparole *consideration* provided to other inmates.

We need not reach the question of whether the Board's action was rationally related to a legitimate governmental purpose because Brandon has failed to make the necessary predicate showings. The success of Brandon's equal protection claim hinges first on his ability to establish that he was treated differently than other prisoners in his circumstances with regard to the Board's failure to afford meaningful reparole consideration because of its delay in obtaining a forensic psychiatric evaluation. *See Brandon,* 734 F.2d at 60; *Sweazea v. Missouri Board of Probation and Parole,* 742 F.2d 482, 483 (8th Cir.1984). The record belies Brandon's assertion that he received disparate treatment. The parties' Stipulations of Fact state that "[d]uring the late 1970's, correctional staff had a problem getting the forensic referrals done promptly." Joint Appendix at 27. Deposition testimony of correctional personnel verifies this statement. Apparently, many similarly situated inmates experienced the same institutional delays as did Brandon; appellant certainly has not established otherwise. Moreover, to the extent that Bran-

don was treated differently than some other inmates guilty of violent crimes and applying for parole, there is absolutely no evidence of intentional discrimination with regard to the handling of Brandon's reparole. Indeed, the evidence suggests that any delays resulted from a lack of resources that afflicted the correctional system generally at the time. Appellant's equal protection claim thus fails because Brandon has not demonstrated that he was subjected to disparate treatment with any element of intentional or purposeful discrimination.

## CONCLUSION

The essence of appellant's complaint is that the District of Columbia Board of Parole failed to follow its regulations and policies in considering his application for reparole. Although a municipality's adherence to its own procedural rules is certainly desirable, every deviation from such procedures cannot be viewed as a federal constitutional violation. Brandon's claims alleged, at most, a violation of District of Columbia law. We reject appellant's attempts to transform his state law claim into a federal court action by dressing it in the verbiage of due process and equal protection. Accordingly, the district court's decision is affirmed.

*It is so ordered.*