**Troy JAMES, Plaintiff,**

v.

**Janet RENO, et al., Defendants.**

**No. Civ.A.98–1750(RWR).**

United States District Court, District of Columbia.

March 11, 1999.

---

Troy James, Beaumont, TX, plaintiff pro se.

Michael C. Johnson, Assistant United States Attorney, Washington, DC, for defendants.

## MEMORANDUM OPINION

ROBERTS, District Judge.

Federal inmate Troy James was denied a reclassification from a high security level to a medium one, and a relocation from a United States Penitentiary to a Federal Correctional Institution. He filed this action for damages, pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for violations of his Fifth and Eighth Amendment rights. He sues the Attorney General, the Director of the Federal Bu-

reau of Prisons and the Regional Director and Regional Designator of the Bureau of Prisons' South Central Region in their individual capacities only. Defendants move to dismiss, or in the alternative, for summary judgment. Because plaintiff has failed to establish a genuine issue of material fact regarding his claims under the Fifth and Eighth Amendments, defendants' motion will be granted.

## I. BACKGROUND

Troy James, age 63, is serving ten years in prison for his conviction on one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *See* Plaintiff's Motion In Opposition to the Defendants Motion to Dismiss, or in the Alternative, For Summary Judgment ("Plaintiff's Opposition"), Exh. G (Criminal Judgment). Mr. James' Presentence Investigation Report filed in relation to this conviction stated that a handgun and shotgun had been found in his van after he fled the scene of an attempted robbery of a San Angelo, Texas department store. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, Declaration of Rick McIntosh ("McIntosh Decl."), ¶¶ 7–8. The report stated that when Mr. James was caught shoplifting a fishing reel by a store security guard, he threw the reel at the guard and "brandished" a folding pocket knife. *Id.* State officials charged Mr. James with aggravated robbery, but this charge was dropped. *Id.*

For more than a year, Mr. James has been housed at the United States Penitentiary in Beaumont, Texas. Complaint, ¶ 8. A Unit Review was conducted shortly after his transfer to Beaumont, in which Mr. James was informed that his security custody level was erroneously high because his current offense should have been scored as "Moderate." *Id.*, ¶ 9. As a result, his Custody Classification was lowered to a medium security level. Plaintiff's Opposition, Exh. H. Mr. James' warden submitted a transfer request to the

lower security Federal Correctional Institution in Three Rivers, Texas, to defendants Ivan White and Denese Snider, the Regional Director and Regional Designator of the Bureau of Prisons' South Central Region. Complaint, Exh. F.

Defendants White and Snider disagreed with Mr. James' Unit Review's scoring of his Custody Classification. Specifically, they determined that the severity of his current offense should be "Greatest" based on the instant offense behavior of aggravated robbery. McIntosh Decl., ¶ 9. Mr. James' Custody Classification Form was amended to again list his "Severity" score as "Greatest" resulting in a high security level. Plaintiff's Opposition, Exh. I. As a result, his transfer to FCI Three Rivers was denied. *Id.*, Exh. K.

## II. STANDARD OF REVIEW

Summary judgment should be granted to the movants if they have shown, when the facts are viewed in the light most favorable to the nonmovant, that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). All reasonable inferences that may be drawn from the facts must be drawn in favor of the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## III. DISCUSSION

This Court must liberally construe the factual allegations of *pro se* pleadings. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Appar-

**40**

ently recognizing this, defendants have filed a motion that attempts to address all claims raised in the complaint or which may be reasonably construed as having been raised. In opposition, plaintiff adamantly states that he is suing the four named defendants in their individual capacities only, pursuant to *Bivens*, 403 U.S. at 388, 91 S.Ct. 1999, seeking only damages for violations of his Fifth and Eighth Amendment rights. *See, e.g.,* Plaintiff's Opposition, at 5, 11, 18.[1] These claims will be addressed individually.

### A. *Fifth Amendment Claims*

#### 1. Due Process

■■■ Plaintiff asserts that he has been deprived of his due process rights under the Fifth and Fourteenth Amendments. To assert a due process claim, plaintiff must identify the denial of a liberty interest. *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Plaintiff argues that mandatory language in Bureau of Prisons' regulations governing security classifications creates a liberty interest in their application to him. A liberty interest is not created by every use of the words "must" or "shall" in statutes and regulations. *Id.,* at 483–84, 115 S.Ct. 2293. Mandatory language may, in certain circumstances, create a liberty interest,

> [b]ut these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the in-

mate in relation to the ordinary incidents of prison life.

*Id.,* at 484, 115 S.Ct. 2293 (citations omitted).

■■ Plaintiff has no liberty interest in his security classification, *Meyer v. Reno,* 911 F.Supp. 11, 17 (D.D.C.1996), or in his place of confinement, *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Nor has plaintiff established that his security classification resulted in restrictions placed upon him that imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. at 484, 115 S.Ct. 2293; *Brown v. Plaut,* 131 F.3d 163, 170 (D.C.Cir.1997). Without a liberty interest in the result of the classification process, plaintiff cannot have a liberty interest in the procedures governing the scoring of his custody classification. *Brandon v. District of Columbia Board of Parole,* 823 F.2d 644, 649 (D.C.Cir.1987). Plaintiff has failed to establish that he has been deprived of a liberty interest without due process.

#### 2. Equal Protection

Plaintiff does not explicitly assert an equal protection claim, but alleges facts in both his complaint and his opposition that are reasonably construed as asserting such a claim. Specifically, plaintiff identifies six fellow inmates who he alleges were serving more time than he for crimes more violent than his, yet who received transfers to FCI Three Rivers when he did not. *See* Plaintiff's Opposition, at 20–21, 23. Plaintiff claims that defendants have shown "unequal treatment" toward plaintiff com-

---

1. Plaintiff denies defendants' construction of his complaint as raising a claim for damages under the Privacy Act, 5 U.S.C. § 552a. To raise such a claim, plaintiff would have to allege that his prison file contained erroneous information. *See Sellers v. Bureau of Prisons,* 959 F.2d 307 (D.C.Cir.1992) (four-part test for damages claim under Privacy Act); *Szymanski v. United States Parole Comm'n,* 870 F.Supp. 377, 378 (D.D.C.1994) (elements of Privacy Act claim require identification of error). Plaintiff does not identify

any incorrect information here, but instead argues that correct information was used to erroneously determine his custody classification. The Privacy Act "is not, however, a vehicle for amending the judgments of federal officials or ... other[s] ... as those judgments are reflected in records maintained by federal agencies." *Kleiman v. Department of Energy,* 956 F.2d 335, 337–38 (D.C.Cir.1992) (quoting *Rogers v. United States Dep't of Labor,* 607 F.Supp. 697, 699 (N.D.Cal.1985)).

pared to these six inmates. *Id.* "[T]he unequal application of a law, fair on its face, may act as denial of equal protection." *Brandon,* 823 F.2d at 650. However, because plaintiff does not establish that he is a member of a suspect class or that his alleged unequal treatment burdens a fundamental right, the government may avoid violating equal protection principles if it can demonstrate that its reasons for treating him differently bear some rational relationship to a legitimate state purpose. *Tucker v. Branker,* 142 F.3d 1294, 1300 (D.C.Cir.1998); *Brandon,* 823 F.2d at 650. In addition, plaintiff must show that defendants' actions in discriminating against him were intentional or purposeful. *Brandon,* 823 F.2d at 650.

■ As a threshold matter, plaintiff's cursory description of six other inmates transferred to FCI Three Rivers does not establish that they were "similarly situated" to him. There are several factors considered in determining a prisoner's custody classification other than length of sentence and type of offense. The equal protection clause "does not require things which are different in fact or opinion to be treated in law as though they were the same." *Women Prisoners of the District of Columbia Dep't of Corrections v. District of Columbia,* 93 F.3d 910, 924 (D.C.Cir.1996) (quoting *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)).

Moreover, plaintiff offers no evidence to support a conclusion that defendants' refusal to transfer him was the result of a constitutionally impermissible motive. Defendants scored plaintiff's current offense as "Greatest" in severity based on information in his Presentence Investigation Report that the instant offense behavior involved an aggravated robbery. *See Dec-*

*laration of Rick McIntosh,* ¶¶ 7–8.[2] Because plaintiff has offered no evidence of unconstitutionally discriminatory motive in defendants' basis for denying his transfer to FCI Three Rivers, summary judgment must be granted to defendants on the equal protection claim. *See Marshall v. Reno,* 915 F.Supp. 426, 432 (D.D.C.1996) (dismissing equal protection claim because plaintiff had not alleged that failure to transfer or deport him was the product of unconstitutionally discriminatory motive).

### B. *Eighth Amendment Claim*

■ The Eighth Amendment protects prisoners from the "wanton and unnecessary infliction of pain" and conditions that are "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Plaintiff argues that the failure of defendants to transfer him to FCI Three Rivers, which is closer to his family, has caused him emotional pain and suffering that constitutes cruel and unusual punishment. The Court is mindful of the pain caused by being separated from loved ones, but that is often a by-product of the punishment of incarceration. Without more, however, plaintiff has failed to establish that defendants engaged in the "wanton and unnecessary infliction of pain" as the result of a "serious deprivation of basic human needs" sufficient to support an Eighth Amendment claim. *Id.,* at 347, 101 S.Ct. 2392. Moreover, without some showing of physical injury, plaintiff cannot recover damages for such pain. 42 U.S.C. § 1997e(e); *Davis v. District of Columbia,* 158 F.3d 1342 (D.C.Cir.1998).

■ Finally, plaintiff argues that his continued confinement in a United States

---

2. Plaintiff objects to what he sees as a suggestion in Mr. McIntosh's declaration that the aggravated robbery charge was dismissed after his sentence. Under the BOP's custody classification regulations, whether plaintiff's aggravated robbery charge was dismissed or even filed is irrelevant. What mattered here

was that the "most severe documented instant offense behavior" constituted aggravated robbery. *See* BOP Policy Statement 5100.06. This "offense behavior" is documented in plaintiff's Presentence Investigation Report; nothing in the BOP regulation requires that it result in a conviction.

Penitentiary is "cruel and unusual" because he is surrounded by prisoners who he claims are more dangerous than those in a Federal Correctional Institution. The Court will not second-guess defendants' decisions in classifying plaintiff or selecting his place of confinement without evidence to support a finding that they somehow violated plaintiff's constitutional rights. *See Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) ("Congress has given federal prison officials full discretion to control" inmates' classification under 18 U.S.C. § 4081). Plaintiff has failed to establish an Eighth Amendment claim.

### C.  *Individual Defendants' Liability*

■ Even if plaintiff had established the denial of a constitutional right, he has failed to establish that these defendants can be held personally liable. Plaintiff has proven neither acts nor omissions by defendants Reno and Hawk. *See Arnold v. Moore,* 980 F.Supp. 28, 33–34 (D.D.C.1997) (dismissing defendants where plaintiff failed to allege that they were personally responsible for the incidents giving rise to the claim). The only defendants personally involved in the decisions giving rise to this action are White and Snider, who are both Bureau of Prisons employees in its South Central Regional office in Dallas, Texas. Plaintiff provides no evidence to warrant a finding that the actions of defendants White and Snider would fall within the District of Columbia's long-arm statute sufficient to provide this Court with personal jurisdiction over these Texas residents. *See Meyer v. Federal Bureau of Prisons,* 929 F.Supp. 10, 13 (D.D.C.1996); *Delgado v. Federal Bureau of Prisons,* 727 F.Supp. 24, 26–27 (D.D.C.1989).

The cases plaintiff cites to support personal jurisdiction over defendants Reno and Hawk are inapplicable to the facts of this case. In both *Alexander v. Perrill,* 916 F.2d 1392, 1398 (9th Cir.1990) and *McQueen v. Tabah,* 839 F.2d 1525, 1529–30 (11th Cir.1988), the courts found that pris-

on officials could be held liable for failing to carry out their responsibilities specifically imposed by prison regulations. While these cases may support imposing liability for any constitutional violations of White and Snider, plaintiff identifies no regulation that imposes responsibility on defendants Reno and Hawk. *See Farmer v. Moritsugu,* 163 F.3d 610, 615 (D.C.Cir. 1998) (medical director cannot be held personally liable for deliberate indifference solely because he was informed of problems where he was not person to whom matters should have been addressed). In *Correa v. Lopez Feliciano,* 759 F.Supp. 947, 954 (D.P.R.1991), the court discussed the elements for finding supervisors liable, including a showing that the supervisors' "own acts or omissions deprived plaintiff of protected rights" and that these acts or omissions were reckless or intentional. Contrary to plaintiff's argument, he has failed to show that the supervision by defendants Hawk and Reno was the cause of any of the alleged constitutional violations.

For all of these reasons, judgment will be granted in favor of defendants. An appropriate Order will accompany this Memorandum Opinion.