**TWELVE JOHN DOES, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, Marion S. Barry, Jr.**

**and**

**Edwin Meese, Attorney General of the United States, Defendants.**

Civ. A. No. 80–2136.

United States District Court, District of Columbia.

July 31, 1987.

Peter J. Nickles, Alan A. Pemberton, John F. Seymour, Covington & Burling, Washington, D.C., for plaintiffs.

Michael E. Zielinski, Asst. Deputy Corp. Counsel, District of Columbia, Civ. Div., Edward Allen, Asst. Corp. Counsel, District of Columbia Dept. of Corrections, Correctional Litigation Section, Joseph E. DiGenova, U.S. Atty., Royce C. Lamberth, John Oliver Birch, John Faciolla, Bradley L. Kelly, Asst. U.S. Attys., Washington, D.C., for defendants.

## OPINION

JUNE L. GREEN, District Judge.

Plaintiffs in this prison conditions litigation request the Court to enjoin the Attorney General of the United States from designating newly sentenced individuals to facilities operated by the District of Columbia Department of Corrections ("DCDC") at the Lorton Correctional Complex until the Court determines that those facilities are "available, suitable and appropriate institutions" within the meaning of D.C.Code § 24–425 (1981). In consideration of the persistent and unacceptable overcrowding at DCDC's Lorton facilities, the Court will grant plaintiffs' motion for a preliminary injunction.

### I. *Background*

The Court has confronted in three separate lawsuits the prison conditions that prevail at the Lorton Correctional Complex. On April 28, 1982, the Court entered a Final Settlement and Consent Decree in *Twelve John Does v. District of Columbia,* Civil Action No. 80–2136 ("No. 80–2136"); on March 23, 1984, the Court entered a similar Final Settlement and Consent Decree in *John Doe v. District of Columbia,* Civil Action No. 79–1726 ("No. 79–1726"); and on December 22, 1986, the Court entered an opinion and order in *Inmates of Occoquan v. Marion Barry,* Civil Action No. 86–2128 ("No. 86–2128"). In each case the Court addressed extensively the conditions at the particular institutions and, *inter alia,* set inmate population limits.

Central to the relief ordered in each case, was the imposition of inmate population limits. *E.g.,* No. 79–1726, March 23, 1984, Consent Decree at 12–14; No. 80–2136, April 28, 1982, Consent Decree at 54 ("[T]he elements of [the Consent Decree] rest fundamentally on the number of residents committed to the Central Facility."); No. 86–2128, 650 F.Supp. 619, 632–33 (D.D.C.1986). In the intervening years, the Court has entertained countless motions from the parties, conducted hearings, and issued numerous orders and memoranda as it has struggled to bring prison conditions at Lorton up to constitutionally acceptable standards.

The pace of events has accelerated considerably in recent months. Despite DCDC's efforts over the past 10 years to increase prison space and develop suitable alternatives to incarceration, more inmates enter the Lorton facilities each month than are released. *See, e.g.,* Report of Specially Appointed Officer of the Court, filed July 20, 1987, in Civil Action Nos. 79–1726, 80–2136, 86–2128; Declaration of Hallem H. Williams, Jr. of April 17, 1987. Indicative of the mounting population pressure at the Lorton Complex, is the recent population increase at the Central Facility in violation of the April 28, 1982, Consent Decree in No. 80–2136. *See* July 13, 1987, Letter from Hallem H. Williams, Jr., Director, Department of Corrections, to Peter J. Nickles, Esq. Further, despite years of compliance with the population limits set forth in the Consent Decree in No. 80–2136, Director Williams indicated that the violation of the Consent Decree occurred because of the need to transfer inmates from seriously overcrowded Occoquan facilities to Central. *Id.* There is no indication that the Central

population increase is temporary. Indeed, with continued innovative law enforcement efforts such as the laudable "Operation Clean-Sweep," and the other Court orders imposing population limits on the Maximum and Occoquan facilities, there is every reason to believe that the violation of the Consent Decree in No. 80–2136 will only become more severe.

## II. Discussion

### A. D.C.Code § 24-425 (1981)

D.C.Code § 24-425 provides that prisoners convicted in the District of Columbia shall be committed "to the custody of the Attorney General of the United States ..., who shall designate the places of confinement where the sentences of all such persons shall be served." The statute provides further that "[t]he Attorney General may designate any *available, suitable and appropriate institutions*, whether maintained by the District of Columbia government, the *federal government or otherwise*, or whether within or without the District of Columbia." (Emphasis added). Plaintiffs assert that the Lorton facilities are no longer "available, suitable and appropriate institutions" by reason of the present population crisis, and thereby rely on D.C.Code § 24-425 in seeking to enjoin the Attorney General from designating any new prisoners to the Lorton facilities.

Persuasive support for plaintiffs' assertion is found in the July 21, 1987, affidavit of Hallem H. Williams, Director of DCDC ("Williams Affidavit"). He states:

> After personal inspection of the conditions of [various Lorton facilities] and consultation with the officials charged with the day-to-day operation of those institutions, it is my considered judgment as Director of [DCDC] that those institutions are not suitable or appropriate for the housing of additional prisoners and that they should not be available for that purpose.

### B. The Standard for Injunctive Relief

In order to be entitled to injunctive relief, plaintiffs must demonstrate that (1) they are likely to prevail on the merits, (2) that they will suffer irreparable harm if injunc-

tive relief is denied, (3) that the other parties will not suffer substantial injury if injunctive relief is granted, and (4) that the granting of injunctive relief is consistent with, or at least not contrary to, the public interest. *Washington Metropolitan Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977); *accord Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958); *see also Cuomo v. U.S. Nuclear Regulatory Commission*, 772 F.2d 972, 974 (D.C.Cir.1985) (Relief may be granted "with either a high probability of success and some injury, or vice versa."). Applying this standard to the exigent facts of this case, the Court concludes that plaintiffs are entitled to a preliminary injunction.

### 1. Likelihood of Success on the Merits

Plaintiffs are likely to succeed on the merits of their claim that continued designations of sentenced prisoners to the Lorton facilities by the Attorney General violates D.C.Code § 24-425. Supplemental Complaint, ¶¶ 22–25. There is no doubt that the Lorton facilities are so overcrowded that they cannot be considered "available," let alone "suitable" or "appropriate," for housing additional prisoners. *See, e.g., Inmates of Occoquan v. Barry*, 650 F.Supp. 619, 620–31 (D.D.C.1986); Williams Affidavit. Indeed, to continue designating prisoners to the Lorton facilities under the present conditions can only be considered an arbitrary and capricious abuse of discretion granted to the Attorney General under D.C.Code § 24-425.

The DCDC Director's letter to Peter C. Nickles, Esq., of July 13, 1987, is a blunt confession that on June 30, 1987, the system-wide prison overcrowding reached such a point that DCDC was compelled to violate the Court's Consent Decree in No. 80–2136 setting a population limit at the Central Facility, after years of abiding by its terms. *See also* Williams Affidavit at ¶¶ 6–7. While in the past year DCDC has been able to "manage" by using other Lorton facilities as "escape valves," and has overcrowded these facilities as part of an effort to remain in compliance with the

Consent Decree in No. 80–2136, the systemic overcrowding has now reached such a point that DCDC has concluded that it simply cannot warehouse safely any more inmates in such other facilities. *See, e.g., Inmates of Occoquan v. Barry,* 650 F.Supp. at 634 (referring to Occoquan facilities as "the system safety valve"); Williams Affidavit at ¶¶ 13–14.

As a further indication of the unbearable pressure that the Lorton facilities are experiencing, the Mayor of the District of Columbia has declared a state of emergency pursuant to the Prison Overcrowding Emergency Act of 1987, initiating the emergency release of certain inmates. *See* Williams Affidavit at ¶¶ 8–9. Still, DCDC is compelled to violate the Court's orders in attempting to cope with this crisis.

Although D.C.Code § 24–425 has not previously been employed by the courts to relieve overcrowding in the District of Columbia, courts have indicated that the statutory duty to designate "suitable and appropriate" facilities imposes substantial and reviewable obligations on the Attorney General. In *Murphy v. United States,* 653 F.2d 637 (D.C.Cir.1981), an inmate plaintiff, injured in an assault at Lorton, sought to hold the United States liable in tort for the Attorney General's failure to designate an "appropriate" prison. While the plaintiff did not prevail, the court recognized that D.C.Code § 24–425 might impose an obligation to assign the plaintiff to an appropriate institution. *Id.* at 642 n. 16.

In *Board of Sup'rs of Fairfax County, Va. v. United States,* 408 F.Supp. 556 (E.D. Va.1976), *appeal dismissed,* 551 F.2d 305 (4th Cir.1977), the County of Fairfax sought to obtain injunctive relief and recover monetary damages against the United States, the Attorney General, and the District of Columbia for injuries resulting from the operation of the Lorton Reformatory. In pertinent part, the court noted that:

> Should the plaintiff prove that the Lorton Complex is in fact a public nuisance, then it would not be a 'suitable' place of confinement for persons convicted of crimes in the District of Columbia courts.

D.C.Code § 24–425 (1973 ed.). The Attorney General in that event could properly be enjoined from exceeding his statutory authority in so designating the Lorton Reformatory.

*Id.* at 561.

The present case presents extreme circumstances. The systemic overcrowding at the Lorton facilities has now manifested itself in a blunt violation of the Consent Decree in No. 80–2136, at minimum, with no relief in sight. Accordingly, the Court is justified in acting to preserve the integrity of its orders. *See Swann v. Charlotte Mecklenburg Board of Education,* 402 U.S. 1, 15, 91 S.Ct. 1267, 1275, 28 L.Ed.2d 554 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); *see also Inmates of Allegheny County Jail v. Wecht,* 612 F.Supp. 874 (W.D.Pa.1985) (court ordered relief affecting lock-up facility because conditions at lock-up facility had deteriorated as a result of defendants' efforts to comply with the court's order setting maximum population at county jail).

2. *Failure to Enjoin the Attorney General Will Irreparably Injure Plaintiffs*

The continued designation of prisoners by the Attorney General to Lorton facilities will surely result in further and increasingly serious violations of the Consent Decree in this case. In recent months DCDC has made serious efforts, however belatedly, to address the chronic overcrowding at Lorton. *See* Williams Affidavit. These efforts have included swift implementation of the District of Columbia Good Time Credit Act, expedited processing of parole applications, and invocation of the Mayor's emergency powers under the Prison Overcrowding Emergency Act of 1987. Despite these and other measures, the inmate population continues to rise. *See, id.;* Report of Specially Appointed Officer of the Court, filed July 20, 1987.

As the history of this case has woefully revealed, DCDC has experienced great dif-

ficulty in complying with, *inter alia,* environmental health requirements, security requirements, and food service requirements of the Consent Decree in No. 80–2136. *See, e.g.,* Amendments to April 28, 1982 Consent Decree of December 17, 1982; August 18, 1983; and March 4, 1985; *see also* Order filed March 27, 1986, in No. 80–2136 (holding defendants in contempt for violations of Consent Decree). The introduction of additional inmates into Central will invariably upset the delicate balance achieved by the Consent Decree, under which much-needed maintenance work is at long last progressing, in addition to various areas concerning environmental, health, and security conditions. Simply put, additional prisoners designated to Lorton mean more overcrowding at Central Facility, thereby aggravating an already bad situation, with all attendant dangers.

### 3. *The Balance of Harm Favors Plaintiffs*

The Court is faced with a "no-win" situation, in that both DCDC and the federal prison system are suffering from overcrowding. Such a situation does not excuse the Court from acting, but, rather, compels the Court to balance the hardships that will be borne by the parties as a result of the Court's decision.

Failure to grant injunctive relief will cause plaintiffs to be confined in ever more overcrowded open-bay dormitories for the foreseeable future. As a result, Central inmates will be subject to the debilitating effects of overcrowding throughout their terms of imprisonment. Such overcrowding will result in deteriorating levels of safety and security, not to mention areas of sanitation and health. *Cf. Inmates of Occoquan v. Barry,* 650 F.Supp. at 620–31.

In contrast, the issuance of injunctive relief will not result in undue hardship to the Attorney General as regards his responsibility for the proper functioning of the federal correctional system. While the court is cognizant of the overcrowding also plaguing the federal system, the Federal Bureau of Prisons is clearly not faced with the crisis state in which DCDC finds itself.

Moreover, the Federal Bureau of Prisons has a large number of facilities (most much more modern than Central) with which to work, and thus can elect to designate District of Columbia inmates to facilities where overcrowding and the effects of overcrowding is less severe.

### 4. *The Public Interest Supports the Issuance of an Injunction*

The public interest also favors granting injunctive relief to prohibit the Attorney General from designating Lorton facilities as suitable places of confinement for newly sentenced District of Columbia prisoners. As evidenced by the July 1986 riot at the Occoquan facilities, overcrowding presents a serious risk of a major disturbance. Crowding inmates into dormitories with minimal privacy creates enormous tension and exacerbates normal prison management difficulties.

The public interest would be far better served by restricting the Attorney General's authority to designate newly sentenced District of Columbia prisoners to Lorton facilities than by other immediately available alternatives. Prohibiting DCDC from admitting any new prisoners to the Lorton facilities and/or resorting to an order directing the untimely release of additional classes of inmates would threaten the integrity of the criminal justice system, not to mention the public safety.

### III. *Conclusion*

While long-term measures to address the chronic overcrowding problem at DCDC's Lorton facilities are being discussed, the present population crisis demands attention. The Court enters the present injunction reluctantly, but does so in recognition of the Attorney General's unique authority over District of Columbia prisoners, the public good, and in an effort to safeguard the safety of plaintiffs.

The Court is entering the injunction to be effective on August 5, 1987. Noting the present crisis situation, the Court will not stay its order pending any appeal. An appropriate order is attached.

## ORDER

Upon consideration of plaintiffs' motion for preliminary injunction; the Attorney General's opposition thereto; the District of Columbia defendants' response; exhibits and affidavits; the arguments presented by counsel at the hearing in this matter; the entire record herein; and for the reasons stated in the accompanying opinion, it is by the Court this 31st day of July 1987,

ORDERED that plaintiffs' motion is granted; it is further

ORDERED that defendant Edwin Meese, in his official capacity as Attorney General of the United States, is enjoined effective August 5, 1987, to cease designating any facilities located at the Lorton Correctional Complex under the control of the District of Columbia as the place of confinement for prisoners convicted and sentenced in the Superior Court of the District of Columbia without outstanding or open charges; it is further

ORDERED that this injunction shall not apply to individuals receiving sentences under the District of Columbia Youth Rehabilitation Amendment Act of 1985, D.C.Code §§ 24–801 to 807 (1981); it is further

ORDERED that this injunction shall not apply to individuals sentenced under the District of Columbia Work Release Act, D.C.Code §§ 24–461 to 469 (1981); it is further

ORDERED that this injunction shall continue until such time as the Court shall determine, upon motion of any party, that the Lorton facilities under the control of the District of Columbia are again "available, suitable and appropriate" facilities within the meaning of D.C.Code § 24–425 (1981); it is further

ORDERED that defendant Attorney General's request for a stay of this order is denied; it is further

ORDERED that Honorable John D. Fauntleroy shall continue in his position as Special Officer of the Court, pursuant to Federal Rule of Civil Procedure 53, until at least January 1, 1988. At that time, should Judge Fauntleroy decide not to continue in this position, a successor will be sought; and it is further

ORDERED that a status conference is scheduled for September 16, 1987, at 10:00 a.m., in Courtroom 7, in No. 80–2136, for the purpose of reviewing the overcrowding situation at the Lorton facilities.