**Jerome J. VERRETT, Appellant,**

v.

**Douglas STEMPSON, Appellee.**

**No. 92–SP–186.**

District of Columbia Court of Appeals.

Submitted Jan. 5, 1993.

Decided April 6, 1993.

Jerome J. Verrett, pro se.

Sidney R. Bixler, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, were on the brief, for appellee.

Before ROGERS, Chief Judge, and SCHWELB, Associate Judge, and MACK, Senior Judge.

ROGERS, Chief Judge:

Appellant Jerome J. Verrett appeals from the denial, without a hearing, of his *pro se* petition for a writ of habeas corpus.

D.C.Code § 16–1901 (Repl.1989). We reverse.

## I.

Appellant was convicted of assault with intent to kill while armed and assault with intent to commit robbery while armed, and sentenced to 12 to 36 years for each count, to run concurrently. The sentencing judge recommended that appellant be sent to a federal prison. Since then appellant has been incarcerated at a number of correctional institutions, all federal except for the Lorton Reformatory, where he had been incarcerated for two months at the time he filed a petition for a writ of habeas corpus. In his petition of January 3, 1992, appellant asserted that while at Lorton he has not received a classification study to determine his housing status and custody level in accordance with D.C. statutes and regulations, and that because he has met all the institutional requirements, he qualifies for minimum security. He further alleged that had he been given the benefit of statutory reductions to which he was entitled, he would be eligible for parole in January 1992 instead of September 23, 1992.

On appeal, appellant contends that the trial court erred in denying him a hearing on his petition in view of the violations of law by the Department of Corrections and the liberty interest and due process rights that he has pursuant to D.C.Code § 24–442, authorizing the Corrections Department to promulgate rules. He relies generally on Title 24, Chapter 4 of the D.C.Code on prisons and prisoners.[1] Specifically, he claims that since he has been returned to Lorton he has been in the maximum security facility and that, although he is eligible for less secure confinement, the authorities have not conducted a classification proceeding pursuant to its regulations and departmental orders,[2] as well as federal law.[3]

1. Appellant also cites *Samuels v. District of Columbia,* 248 U.S.App.D.C. 128, 770 F.2d 184 (1985); *Hughes v. District of Columbia,* 425 A.2d 1299 (D.C.1981), and *Smith–Bey v. District of Columbia,* 546 F.Supp. 813 (D.D.C.1982). For reasons stated in the opinion, appellant's reliance is misplaced in the absence of proof of violation of his civil rights.

2. Appellant refers to Corrections Department Divisional Operational Policies numbers 4010.1 and 4240.4. The government states in its brief that it is unaware of such orders relating to classification. Appellant has not made the policies a part of the record on appeal, and they are not published in the D.C.Register; nor do they appear in the DCMR. Hence, the court is un-

Because of this lack of classification, he contends, he was bypassed in receiving parole credit for good conduct, D.C.Code § 24–428, educational good time, *id.* § 24–429, and Emergency Powers Act reductions, *id.* § 24–902. As a result, he maintains that his parole hearing date, September 23, 1992, is incorrect. He seeks to require the authorities to classify him so he can be in a less restrictive facility, maintaining that he has a statutory and liberty interest in the classification procedures and parole.

The government responds that there is no liberty interest in parole, and that violation of a departmental classification order does not create a liberty interest. By order of January 31, 1992, the motions judge denied the petition for a writ of habeas corpus without a hearing and discharged the show cause order.

## II.

■ The writ of habeas corpus "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Jones v. Cunningham,* 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963). Under the District's habeas statute, D.C.Code § 16–1901, issuance of the writ is simply a means of bringing the petitioner before the Superior Court for a hearing on the petitioner's claim for relief. *See Christian v. United States,* 394 A.2d 1, 43 (D.C.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *Lewis v. Stempson,* 737 F.Supp. 667, 669 (D.D.C. 1990). After the hearing, if the court determines that the petitioner's detention is unlawful, the court must grant the relief requested in the petition, including release or conditional release, if appropriate. If the court determines that detention is lawful, the court must deny the relief request-

ed. *See Mizell v. Attorney General of New York,* 586 F.2d 942, 947 (2d Cir.1978), *cert. denied,* 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979). As the Supreme Court said over forty years ago:

> The historic and great usage of the writ, regardless of its particular form, is to produce the body of a person before a court *for whatever purpose might be essential to the proper disposition of a cause.* The most important result of such usage has been to afford a swift and imperative remedy in all cases of illegal restraint upon personal liberty.

*Price v. Johnston,* 334 U.S. 266, 283, 68 S.Ct. 1049, 1059, 92 L.Ed. 1356 (1948) (emphasis added); *see Stewart v. Overholser,* 87 U.S.App.D.C. 402, 405, 186 F.2d 339, 342 (1950) (en banc) (habeas corpus proceedings should be conducted with a liberal judicial attitude, given broadly remedial nature of the writ).

■ In order for a writ of habeas corpus to issue "the facts set forth in the petition [must] make a prima facie case." D.C.Code § 16–1901(a); *United States v. Tuck,* 194 U.S. 161, 170, 24 S.Ct. 621, 624, 48 L.Ed. 917 (1904). It is enough if an inmate "present[s] an allegation and supporting facts which, if borne out by proof, would entitle him [or her] to relief." *Price, supra,* 334 U.S. at 292, 68 S.Ct. at 1063. Furthermore, because inmates "are often unlearned in the law and unfamiliar with the complicated rules of pleading," and "[s]ince they act so often as their own counsel in *habeas corpus* proceedings, we cannot impose on them the same high standards of the legal art which we might place on the members of the legal profession." *Id.* Thus, the issue is whether appellant has made out a prima facie case to support his assertion that his due process rights had been violated and hence, that the motions judge erred in denying the petition and a hearing.

---

able to evaluate the merit of appellant's claim under those policies.

**3.** Appellant relies on the Prisoner Rehabilitation Act of 1965, Pub.L. 89–176, 18 U.S.C. §§ 4081—4084 (1988), giving, he claims, every prisoner

the right to be classified according to his institutional behavior, adjustment, programming, achievement and progress. *See* 18 U.S.C. § 4081 (classification and treatment of federal prisoners).

Appellant's classification contention is related to his claim that he is being denied a right to a corrected parole date. First, appellant contends that his liberty interest and due process rights were violated because the correctional authorities did not apply their classification procedures to him and place him in a less restrictive environment.[4] Second, he maintains that the failure to classify him has resulted in an incorrect parole eligibility date as a result of denial of statutory entitlements.

## A.

■ The place that a prisoner is confined and the procedure by which that is determined is an internal administrative procedure. The Supreme Court has held that "[t]he conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons." *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Further, the Court stated, the Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system." *Id.* at 225, 96 S.Ct. at 2538. The Court also observed that "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Id.* at 224, 96 S.Ct. at 2538. This court has specifically held that a prisoner "ha[s] no legally recognized interest in remaining at Lorton Reformatory." *District of Columbia v. Cooper,* 483 A.2d 317, 322 (D.C.1984) (citing D.C.Code § 24–425 (1981), and *Curry–Bey v. Jackson,* 422 F.Supp. 926, 932 (D.D.C. 1976)).

In the instant case, no attempt is being made to do anything as drastic as to compel transfer of appellant to another correctional facility. If correctional authorities can transfer prisoners between institutions at will, it follows that it is within their discretion to determine the particular building within an institution in which to place prisoners without necessarily impinging on a prisoner's liberty interests. However, there may be circumstances that limit that discretion.

The Mayor is vested with jurisdiction under D.C.Code § 24–402 (Repl.1989) over the placement of District of Columbia prisoners within the District's correctional system. The Corrections Department, in turn, is responsible for the "safekeeping, care, protection, instruction, and discipline of all persons committed to [D.C. correctional] institutions." D.C.Code § 24–442. The government advises that the procedure for assigning prisoners to housing appears in Department of Corrections Order 4090.3, which is the Department of Corrections Classification Operations Manual. This manual states that prisoners have a right to classification. Specifically, the Manual provides that:

"As part of the Intake process, an initial custody classification will be completed for new admissions to the Diagnostic Unit. A new admission is defined as a newly sentenced adult felon, YRA offender, misdemeanant on waiver, and parole violator. (Transfer cases will normally not be processed through the Diagnostic Unit, but should have a custody status review as part of the orientation process at the receiving institution)."

Chapter 3 at 39. The Manual also provides that a prisoner "should be classified in the least restrictive environment consistent with their supervision and safety requirements." *Id.* at 37. The Manual states, moreover, that "[s]everal landmark Court

---

**4.** Nothing in the record indicates that appellant has pursued administrative remedies. *Cf. Vaughn v. United States,* 598 A.2d 425, 432–33 (D.C.1991). The government did not raise a claim that appellant had not pursued administrative remedies, and hence we do not address whether a prisoner must exhaust remedies. *See id.* at 431 (in response to argument of govern-

ment that a prisoner should first pursue relief by habeas corpus or by departmental administrative appeals, court stated that it has not viewed habeas corpus as exclusive means to challenge constitutional and regulatory deficiencies in prison disciplinary proceedings) (citations omitted).

decisions, notably the twelve John Does Settlement Agreement, have affirmed the importance of reclassification as a basic inmate right and essential to a sound correctional system."[5] *Id.* at 66. *See also Inmates of Occoquan v. Barry,* 717 F.Supp. 854, 864 (D.C.1989) ("[c]lassification of inmates is critical for prison security").

■ This court has not decided whether the Manual creates a legally protected liberty interest in classification. Although the Manual is not a regulation in the sense that term has been used by the court in requiring agencies to comply with their lawfully promulgated regulations, *see Vaughn, supra* note 4, 598 A.2d at 433 (citing *Dankman v. District of Columbia Bd. of Elections,* 443 A.2d 507, 513 (D.C. 1981) (en banc)), the Manual itself states that it "establishes uniform procedures for the classification of sentenced persons ... committed to the Department by appropriate authority for the service of a court imposed sentence." Manual (Purpose and scope) at 1. Furthermore, it is promulgated as a Department Order and it refers specifically to legal authority which is binding on the Department. We conclude, therefore, that the Corrections Department ·must comply with its Manual on the basis of the same principle that requires an agency to comply with its own regulations. While the Mayor and the Corrections Department have discretion under the statute to make classification decisions,[6] they are bound to follow the procedures that they have promulgated in the Manual.[7] *See Vaughn, supra* note 4, 598 A.2d at 433. Appellant's contention is that the correctional officials have violated their own classification procedures and thereby deprived him of a protected liberty interest that arises from the procedures in the Manual.[8] *See Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983) ("a State creates a protected liberty interest by placing substantive limitations on official discretion"); *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) ("the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest"). Accordingly, in view of the plain language of the Manual, we hold that appellant is entitled to a hearing on the question of whether he has a right to classification in a less restrictive facility. Conse-

5. In the *Twelve John Does* cases, the inmates in the Central facility at the Lorton Correctional Complex filed suit seeking damages, injunctive relief, and a declaration that a number of prison conditions, including overcrowding, violated their Eighth Amendment rights. *Twelve John Does v. District of Columbia,* 268 U.S.App.D.C. 308, 310, 841 F.2d 1133, 1135 (1988). In April, 1982, they entered into a consent decree with the District government which required the District to undertake specific reforms to improve prison conditions and to limit the population. *Id.,* 841 F.2d at 1135; Final Settlement and Consent Decree, *Twelve John Does v. District of Columbia,* Civ. No. 80–2136 (D.D.C. Apr. 28, 1982). *See also Twelve John Does v. District of Columbia,* 274 U.S.App.D.C. 62, 861 F.2d 295 (1988); *Twelve John Does v. District of Columbia,* 272 U.S.App.D.C. 235, 855 F.2d 874 (1988); *Twelve John Does v. District of Columbia,* 668 F.Supp. 20 (D.D.C.1987), *rev'd* on other grounds, 268 U.S.App.D.C. 308, 841 F.2d 1133 (1988).

6. *Cf. Garza v. Miller,* 688 F.2d 480, 488 (7th Cir.1982) (designation of place of confinement entirely within discretion of prison authorities); *Rosenberg v. Meese,* 622 F.Supp. 1451, 1470 (D.N.Y.1985) ("[t]he [Bureau of Prisons'] discre-

tion in making classification decisions is virtually unfettered, subject only to the requirement of rationality") (citing *Smith v. Coughlin,* 748 F.2d 783, 787 (2d Cir.1984) (prisoner entitled to a special cell; court held, "[t]he United States Constitution does not create any protected liberty interest in remaining in the general prison population")).

7. Appellant's contention that correctional officials have violated the Prisoners Rehabilitation Act of 1965, 18 U.S.C. §§ 4081–4086 (1988), is meritless. That Act applies to transfers between correctional systems, not to those within a correctional complex. Even if the Act did apply, the Attorney General may decide to transfer or to "designate as a place of confinement any available, suitable, and appropriate institution or facility." 18 U.S.C. § 4082(b) (1984 amendments deleted this language, but the amendment was not effective until November 1, 1987, and was applicable only to offenses committed after that date; appellant was sentenced in 1983).

8. Appellant makes no claim that the conditions of his confinement are *per se* violative of the Constitution because, for example, of irrationality or cruel and inhumane punishment.

quently, the motions judge erred by dismissing his petition for a writ of habeas corpus without a hearing and discharging the show cause order.

## B.

The Supreme Court has held that the Due Process Clause does not create a liberty interest in being paroled. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7–8, 99 S.Ct. 2100, 2103–2104, 60 L.Ed.2d 668 (1979). Instead, courts must look to local parole statutes and determine if they create a "protectible entitlement". *Id.* at 12, 99 S.Ct. at 2106.

The parole statutes of the District of Columbia give the Parole Board discretion as to when to parole a prisoner, once that prisoner has served his minimum sentence. *See* D.C.Code § 24–204(a). But, contrary to the government's position that appellant has no legally protected liberty interest in a particular date of parole, we find no decision of this court, and the government has cited none, interpreting the statutory and administrative scheme for granting parole in order to determine whether it confers upon inmates a sufficient expectation of release so as to confer a liberty interest that may not be extinguished without satisfying due process.

In *Brandon v. District of Columbia Bd. of Parole*, 631 F.Supp. 435 (D.D.C.1986), *aff'd*, 262 U.S.App.D.C. 236, 823 F.2d 644 (1987), the District Court judge found that D.C.Code § 22–2404(a) (1973) "contain[ed] no mandatory language requiring the Parole Board to release inmates." *Id.* at 439. The judge further ruled that the Board's 1972 rules and regulations merely provided "guidelines" to advise the Board's exercise of discretion. Under these circumstances, the court concluded that the 1972 rules and regulations did not confer a liberty interest in reparole. *See id.*

*Brandon* is not dispositive of the liberty interest issue for the District Court judge's decision is not binding on the District of Columbia courts, *see* D.C.Code § 11–102 (1989), and the United States Court of Appeals for the District of Columbia Circuit was not asked to and did not determine whether the District of Columbia parole system creates a protectible liberty interest in parole release. *Brandon v. District of Columbia Bd. of Parole, supra*, 262 U.S.App.D.C. at 241–42, 823 F.2d at 649–50. More significantly, the District Court judge, writing in 1986, only interpreted the language of D.C.Code § 24–204 (authorization of parole), which includes a provision that "the Board may authorize [an inmate's] release on parole upon such terms and conditions as the Board shall from time to time prescribe." The regulations have since been amended in a respect relevant to the present controversy.

In 1987, the Council of the District of Columbia amended the parole statute to include D.C.Code § 24–201.2(a) (Repl.1989) (powers and duties of the Parole Board). The amendments became effective in 1988. They provide, in part, that:

(a) The Board shall:

(1) Determine if and when it is in the best interest of society and the offender to release him or her on parole or on conditional release in the case of committed youth offenders;

(2) Determine the terms and conditions of parole or conditional release;

(3) Supervise parolees in the community.

The regulations promulgated in December, 1987, by the D.C.Council, are comprehensive and include several provisions which appear to be mandatory. These regulations provide, in pertinent part, that:

Except in the case of offenders committed under the Youth Corrections act, each prisoner, upon approaching eligibility for parole consideration, *shall be asked* by the Department of Corrections personnel to execute a form either applying for or declining consideration for parole.

If an individual declines to execute the form indicating application or waiver of consideration, that person *shall be scheduled to appear* before the Board or its designated examiner, for purposes of being advised as to his or her eligibility rights under the statute.

28 DCMR §§ 102.1—102.2 (emphasis added) (1987); D.C.Code § 24–201.3 (Repl.1989). The 1987 regulations, unlike parole schemes in other jurisdictions, make it clear that application for parole is a right, not a privilege.[9] 28 DCMR §§ 102.1—102.2.

The current statutory provisions, and the implementing regulations, were in effect at the time that appellant became eligible for parole. Hence, appellant's claim that he has a cognizable liberty interest in an expectation of parole is not foreclosed. *See Board of Pardons v. Allen,* 482 U.S. 369, 378–79 n. 10, 107 S.Ct. 2415, 2420–21, n. 10, 96 L.Ed.2d 303 (1987) (noting four different classifications of parole granting schemes).[10]

We need not decide, however, whether appellant has a liberty interest in parole because his only claims relate to his classification and the correctness of his parole eligibility date. On the former claim, we agree that he had made allegations sufficient to warrant a hearing. As to the latter, the Corrections Department confirmed that September 23, 1992, is the correct date, and the worksheet from the Department indicates that appellant has not been denied any of his statutory rights. The Department worksheet shows that appellant has, in fact, received credit for good conduct. Appellant's claim, that had he received Emergency Powers Act credit on the minimum portion of his sentence for 1987, 1989, and 1990, his parole date would be January 23, 1992, is meritless because that statute is inapplicable to appellant.

The Emergency Powers Act prohibits the Mayor from reducing the minimum sentence of prisoners who have more than 180 days left to serve on their minimum sentence, which is true of appellant, and prisoners who are serving sentences for assault with intent to rob or assault with a dangerous weapon, which also applies to appellant. D.C.Code §§ 24–902(e) & (f)(2). Therefore, unless appellant's classification affects his parole date, he has failed sufficiently to allege that his liberty interest in parole has been violated.

### C.

In conclusion, because appellant has fairly alleged that his right to classification in the least restrictive facility as provided by the Department Classification Operations Manual, Corrections Department Order No. 4090.3, was violated,[11] there was a need for a hearing, and the motions judge erred in denying his petition for a writ of habeas corpus and by discharging the show cause order. Accordingly, we reverse the order of January 31, 1992, and remand the case to the trial court for further proceedings.

**9.** In *Vincenzo v. Warden,* 26 Conn.App. 132, 599 A.2d 31, 35 (1991), the court determined that the Connecticut parole scheme does not confer a liberty interest in expectation of parole, relying in part on the fact that the parole statute does not confer a right to demand parole and does *not require the parole board to consider an* inmate's eligibility for parole, even if the inmate has satisfied the statutory criteria for release.

**10.** These categories are:
[1] When statutes or regulatory provisions are phrased in mandatory terms or explicitly create a presumption of release, courts find a liberty interest. [2] Conversely, statutes or regulations that provide that a parole board "may" release an inmate on parole do not give rise to a protected liberty interest. [3] A third

type of statute provides that an individual shall *not* be released *unless* or shall be released *only when* certain conditions are met; courts have divided on whether such statues create a liberty interest.... [4] Yet a fourth type of analysis finds a liberty interest when a statute or a regulatory parole-release scheme uses elaborate and explicit guidelines to structure the exercise of discretion.
*Board of Pardons v. Allen, supra,* 482 U.S. at 378–79, n. 10, 107 S.Ct. at 2420–21, n. 10 (citations omitted).

**11.** *See Johnson–El v. District of Columbia,* 579 A.2d 163, 166 (D.C.1990) (the court interprets *pro se* pleadings liberally).