**Randolph ARTIS, Petitioner,**

v.

**U.S. DEPARTMENT OF JUSTICE,
et al., Respondents.**

No. 01–579.

United States District Court,
D. New Jersey.

Oct. 18, 2001.

Randolph Artis, Fairton, NJ, pro Se.

Robert J. Cleary, United States Attorney by Paul Blaine, Asst. U.S. Atty., Camden, NJ, for Respondents.

## OPINION

SIMANDLE, District Judge.

This matter is an application for writ of habeas corpus pursuant to 28 U.S.C. § 2241 by petitioner Randolph Artis, an

inmate at FCI Fairton who is serving a lengthy term of imprisonment for beating his wife to death with a baseball bat. In his petition, Mr. Artis claims that his due process and ex post facto rights have been violated because the United States Parole Commission applied the federal parole rules rather than the Army parole regulations to his case. For the reasons discussed herein, the petition will be denied.

## I. *BACKGROUND*

On February 22, 1983, Petitioner was convicted by Army Court Martial of premeditated murder and sentenced to death. (Pet. at 1.) The conviction and sentence followed the 1982 crimes of Petitioner, which included bludgeoning his wife repeatedly in the head with a baseball bat until she was dead. (Resp't's Br. at 1.)

The tumultuous personal and family issues leading to the murder of Mrs. Artis are relevant. Petitioner got married in 1979, the marriage rapidly deteriorated, and three times Petitioner attempted to secure a divorce. (Resp't's Ex. 1, Prisoner's Progress Summary Data, DD Form 1477, dated September 8, 1986.) Each time, however, Petitioner's wife talked him out of it. (*Id.*) In 1982, the marital situation worsened, Petitioner's job performance deteriorated, and his military career ended when he received a Bar to Reenlistment in April 1982. (*Id.*) That same year, as a reaction to the failed marriage and his ruined military career, Peti-

tioner attempted to commit suicide by ingesting pills. (*Id.*) On September 17, 1982, Petitioner killed his wife with a baseball bat, wrapped her body in a blanket, put it in the trunk of his car, drove away from the military housing quarters, and dropped her body on the side of the road. (Resp't's Ex. 2, Sentence Monitoring Computation Data.) Later that day the military police questioned him about his wife, and he admitted to the murder. (*Id.*)

On June 17, 1985, Petitioner appealed his conviction and sentence to the United States Military Court of Appeals, and the death sentence was commuted to life imprisonment. (Pet. at 1.) On October 24, 1986, certiorari was denied by the United States Military Court. On November 6, 1992, the Army Clemency Board reduced petitioner's life sentence to ninety-nine years. (*Id.*) Later, three further reductions of Petitioner's sentence were made. (Resp't's Ex.2, Sentence Monitoring Computation Data.) The Army Clemency Board reduced Petitioner's sentence to ninety-six years on October 28, 1994, to ninety-three years on December 5, 1997, and to ninety-one years on September 23, 1999.[1] (*Id.*)

On August 10, 1998, Petitioner was transferred from military custody to federal custody at the U.S. Penitentiary, Allenwood, Pennsylvania. (Resp't's Br. at 1.) He was subsequently transferred to FCI Fairton, where he has been housed since.[2] (*Id.*)

---

1. There are slight discrepancies between the dates given in Respondent's Brief regarding the further reductions in the Petitioner's sentence and the dates given by Petitioner. Petitioner recalls that the reductions were made as follows: on September 21, 1994, sentence reduced to 96 years; on October 20, 1997, sentence reduced to 93 years; on October 23, 1999, reduced to 91 years. (Pet. at ii.) At another point in his petition, Petitioner cites September 23, 1999 for the last reduction, which coincides with the date given in the

Respondent's Brief. (Pet. at 1.) The dates given in the government's answer are used in this brief because the government provided specific documentation to support the dates it provided. Moreover, the dates of Petitioner's sentence reductions are not material to the issues in his petition.

2. Petitioner states that he was transferred from military custody at Fort Leavenworth, Kansas to federal custody in New Jersey because of the "unsafe and unhealthy living

On December 9, 1998, the United States Parole Commission ("Commission") conducted an initial parole determination hearing. (Resp't's Ex.3, Initial Hearing Summary, 12/9/98.) At that hearing, the Commission assigned Petitioner a salient factor score of 10 points, and rated his offense severity as Category Eight, because he committed murder.[3] (Resp't's Br. at 2.) This combination of salient factor score and offense severity category yielded a parole guideline range of 100–plus months.[4] (Resp't's Ex.3, Initial Hearing Summary, 12/9/98.) The Commission found that release on parole would not be warranted within the next fifteen years and ordered that Petitioner's next reconsideration hearing would be held in December 2013.[5] (Exhibit 3, at 4.) The Commission notified Petitioner of this decision by notice of action dated December 29, 1998. (Resp't's Ex. 4, Notice of Action, 12/29/98.)

On administrative appeal, the National Appeals Board affirmed this decision on May 14, 1999. (Resp't's Ex. 5, Notice of Action on Appeal, 5/14/99.) The Board weighed factors such as Petitioner's advanced education, his institutional accomplishments, and considered Petitioner's argument that there were other mitigating factors regarding his crime and personal history that justified his parole. (*Id.*) However, when these factors were weighed against the "unusual brutality" of the murder, the Commission found that a lengthy continuance more than 48 months

beyond the minimum of the parole guideline was still warranted.(*Id.*) Thus, the Commission informed Petitioner that "the severity of the offense was a permissible basis for denying [him] a parole date." (*Id.*)

On January 31, 2001, pursuant to 28 C.F.R. § 2.14(a)(1)(ii), the Commission conducted a statutory interim hearing. (Resp't's Ex. 6, SIH/Review Hearing Summary, 1/31/01.) After considering Petitioner's additional institutional accomplishments, the Commission determined that no change in the prior order was warranted.[6] (*Id.*) Petitioner was informed of this decision by notice of action dated March 8, 2001. (Resp't's Ex. 7, Notice of Action, 3/8/01.)

On March 7, 2001, Petitioner had his habeas corpus petition filed *in forma pauperis* pursuant to 28 U.S.C. § 2241, alleging that Army regulations entitle him to annual parole hearings, and thus the Commission is violating his due process rights by not applying Army parole regulations to his case. (Pet. at 1.) Petitioner further claims that the Commission violated the *ex post facto* clause of the Constitution in applying the federal parole rules, rather than the Army parole regulations. (*Id.* at 4.)

## II. *DISCUSSION*

Petitioner brings this petition pursuant to 28 U.S.C. § 2241, claiming that the

---

conditions of the [military] prison." (Pet. at 2.)

3. *See* 28 C.F.R. § 2.20 (2000).

4. 28 C.F.R. § 2.20, Guidelines for Decision-making.

5. The Parole Commission observed that release at this point would depreciate the seriousness of the offense and promote disrespect of the law.(Resp't's Br. at 2.)

6. "[T]he [petitioner] was told that his 15 year Reconsideration Hearing was within the jurisdiction of the U.S. Parole Commission and that every 2 years he would be heard and evaluated to see if that date should be changed for any kind of behavior, negative or positive. Recommendation: No change in 15 year Reconsideration date of 12/2013." (Resp't's Ex. 6 at 2.)

United States Parole Commission ("Commission") is violating his due process rights by not applying Army parole regulations to his case. He further claims that the Commission violated the ex post facto clause of the U.S. Constitution by applying the federal parole rules, rather than the Army parole regulations.

## A. The Due Process Claim

■ Military prisoners who are confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons sentenced by the courts of the United States. 10 U.S.C. § 858(a).[7] Courts interpreting § 858(a) have consistently held that a military prisoner who is serving his sentence in a federal penitentiary automatically becomes entitled to any of the advantages and subject to any disadvantages that accrue to the civilian prisoner. *See e.g. Stewart v. United States Board of Parole*, 285 F.2d 421, 421–22 (10th Cir.1960), cert. denied, 365 U.S. 862, 81 S.Ct. 830, 5 L.Ed.2d 825 (1961). In other words, military prisoners in Bureau of Prison facilities are governed by BOP rules not military regulations. *See Romey v. Vanyur*, 9 F.Supp.2d 565 (E.D.N.C.1998); *Hirsch v. Secretary of the Army*, 172 F.3d 878, 1999 WL 110549 (10th Cir.1999)(unpublished opinion). In *Hirsch*, the Tenth Circuit held that 10 U.S.C. § 858(a) reflects Congress's intent that military prisoners who have been transferred into federal custody are subject to all of the federal laws and regulations governing any other prisoner, including federal parole provisions. *See also Roberts v. United States Dept. of the Navy*, 961 F.2d 220, 1992 WL 75205 (10th Cir.1992) (unpublished opinion).

Moreover, Army Regulation ("AR") 15–130, § 3–1(e)(9) expressly states that a military prisoner, upon transfer to a federal penal institution, is subject to the same discipline and treatment as ordinary federal prisoners, and not to military regulations.[8] *See O'Callahan v. Attorney Gen.*, 230 F.Supp. 766 (D.Mass.1964), *aff'd*, 338 F.2d 989 (1st Cir.1964), cert. denied, 381 U.S. 926, 85 S.Ct. 1563, 14 L.Ed.2d 685 (1965).

■ Under regulations established by the Secretary of the Army, military inmates with sentences similar to that of Petitioner receive parole hearings annually. AR 15–130, § 3–1(e).[9] Petitioner argues that he has a due process right to annual parole hearings based upon AR 15–130, § 3–1(e).(Pet. at 1–2). However, Petitioner fails to explain why AR 15–130, § 3–1(e) should continue to apply to him when he is a prisoner in a federal facility, but AR 15–130, § 3–1(e)(9), *supra* note 8, should not. The logical inconsistency therein undermines Petitioner's argument.

---

7. 10 U.S.C. § 858(a) reads as follows:
 Under such instructions as the Secretary concerned may prescribe, a sentence of confinement, adjudged by a court-martial or other military tribunal, ..., may be carried into execution by confinement in any place of confinement under the control of the armed forces or in any penal or correctional institution under the control of the United States, .... Persons so confined in a penal or correctional institution not under the control of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States....

8. AR 15–130, § 3–1(e)(9) provides that:
 "Prisoners transferred to Federal facilities are under the control of the U.S. Parole Commission, unless otherwise designated in writing. As such, Federal and Commission policies and procedures apply, not those of this regulation."

9. AR 15–130, § 3–1(e) provides that:
 "A prisoner in a military correctional facility will be considered for parole when the prisoner first becomes eligible and annually thereafter."

■ Furthermore, to the extent that Petitioner is alleging a procedural due process right to the procedures of the military parole scheme, his claim fails because Petitioner does not have any liberty interest in parole under the military parole system. AR 15–130, § 2–2(c) explicitly states that "there is no right to . . . parole." Inasmuch as the military parole regulations do not create any liberty interest in parole release, Petitioner does not have any procedural due process rights under that system. *See Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644 (D.C.Cir.1987) (mere fact that government establishes certain procedures does not mean that procedures thereby become substantive liberty interests entitled to federal constitutional protection under due process clause). *See also Sandin v. Conner*, 515 U.S. 472, 477–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 11–12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)(there is no absolute due process right to parole). Given that the Army regulation makes it clear that there is "no right" to parole, Artis has no basis for arguing that he has any procedural due process rights in connection with parole.

Furthermore, the argument that a due process right to a hearing specified by regulation exists is problematic. *Brandon*, 823 F.2d at 647. In *Brandon*, a District of Columbia prisoner argued that he had a due process right to have the Parole Board adhere to a hearing schedule set out in its regulations. The court held that "Appellant's claim that he has a constitutionally protected liberty interest in a[ ]parole hearing and thus a due process right to have the Board adhere to its regulations lacks support in law or logic. . . ." *Id.* at 648. The court noted that "process only assumes significance in a context" and "[t]he notion that naked process itself takes on constitutional dimensions has most troublesome implications." *Id.* at 648.

■ Courts have explicitly and repeatedly rejected the proposition that an individual has an interest in a state-created procedural device, such as a hearing, that is entitled to constitutional due process protection. The Supreme Court itself has recognized that "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 n. 12, 103 S.Ct. 1741, 75 L.Ed.2d 813,(1983)(citing other courts that have held the same). The mere fact that the government has established certain procedures does not mean that the procedures themselves become substantive liberty interests entitled to federal constitutional protection under the Due Process Clause.

■ The Due Process Clause ensures that the government does not arbitrarily deprive an individual of liberty by requiring that any deprivation be effected pursuant to constitutionally adequate procedures. An essential principle of due process is that a deprivation of liberty "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950). This requirement for "some kind of a hearing," *Board of Regents v. Roth*, 408 U.S. 564, 570 n. 7, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), highlights the untenability of Artis's claim. If, as he asserts, due process protects his annual parole hearing, then he would be entitled to a hearing before he could be deprived of his parole hearing. This circular result demonstrates the illogic of attempting to locate a separate protected liberty interest in procedural rules created by governmental bodies. *Brandon*, 823 F.2d at 648. Ar-

tis's due process argument, therefore, will be rejected.

## B. *The Ex Post Facto Claim*

Petitioner also claims that the United States Parole Commission ("Commission") violated the ex post facto clause of the United States Constitution in applying the federal parole rules rather than the Army parole regulations. Petitioner complains that the statutory and regulatory provisions providing for subsequent parole suitability hearings, which were applied to him after he was transferred to federal prison, violate the ex post facto clause because he would have received rehearings *annually*, if he had remained in a disciplinary barracks.[10] Petitioner claims that by applying federal guidelines to a military prisoner, the Parole Commission extended his minimum term of confinement by fifteen years when it set a fifteen-year reconsideration hearing date. (Pet. at 4.)[11] However, once transferred to a civilian prison, Petitioner falls under the Commission's jurisdiction and is treated like any other civilian prisoner serving a parolable sentence. AR 15–130, § 3–1(e)(9).[12] By statute and regulation, in any case in which a prisoner is not released on parole after his initial

hearing, subsequent parole hearings are held every 24 months for prisoners with terms of seven years or longer. 28 C.F.R. § 2.14(a)(1)(ii). Moreover, contrary to what Petitioner claims, the change in the frequency of rehearings does not increase the punishment already imposed on Artis. He is simply not up for review as often. Additionally, there is no guarantee that a hearing would lead to parole.

The Supreme Court has held that a change in the law with regard to subsequent rehearings did not violate the ex post facto principles when the law was applied retroactively to certain prisoners who had no reasonable probability of being deemed suitable for parole at interim hearings. See *California Dep't of Corrections v. Morales*, 514 U.S. 499, 508–13, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). The distinction between parole eligibility and suitability for parole is important here.[13] Although changing a prisoner's parole eligibility date may violate the ex post facto clause, changing how frequently an already eligible prisoner receives hearings does not. *Morales*, 514 U.S. at 513, 115 S.Ct. 1597. Thus, when Petitioner was transferred from military custody at Fort Leavenworth to federal custody in New

---

10. Petitioner's argument is not about parole *eligibility*, but rather about parole *suitability* rehearings that occur after an initial hearing in which parole is denied. Eligibility for parole is not synonymous with suitability. A prisoner may be deemed eligible for parole by statute, but this does not mean that he is regarded as suitable for parole in the exercise of administrative discretion. AR 15–130, § 3–2(a). The Commission does not dispute that Petitioner is eligible for parole, or that his minimum term is unchanged by the Commission's denial of parole. The Commission's decision means that the Commission does not believe he will be suitable for release on parole for at least fifteen years from the date of his initial hearing. (Resp't's Ex. 3, Initial Hearing Summary, at 4).

11. The Supreme Court has stated that to violate the ex post facto clause, a retrospectively applied provision must increase a punishment previously imposed. *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); *California Dep't of Corrections v. Morales*, 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995); *Collins v. Youngblood*, 497 U.S. 37, 50, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). See also *E.B. v. Verniero*, 119 F.3d 1077, 1092 (3d Cir.1997). Petitioner's assertion that the Commission has extended his minimum term of confinement confuses "eligibility" for parole with "suitability." *Supra* note 10.

12. *See supra* note 8.

13. *See supra* note 10.

Jersey, the *frequency* of his parole hearings decreased because federal parole rules applied to him, but this did not constitute a violation of the ex post facto clause.

 Moreover, Petitioner is incorrect when he argues that the rehearing schedule for civilian prisoners is being retroactively applied to him. He committed his offense in 1982, and the 24–month rehearing schedule was in effect at that time. *See* 42 Fed.Reg. 39809 (Aug. 5, 1977). The statutory provision requiring that transferred military prisoners be "subject to the same discipline and treatment" as other civilian prisoners [14] was also in effect at that time. Therefore, the application of this provision to Petitioner is not retroactive.

Furthermore, Petitioner argues that the change in the frequency of the parole hearings increases his punishment and thereby violates the ex post facto clause. (Pet. at 1.) As noted above, the change in the frequency of rehearings does not increase the punishment already imposed on Artis. The Supreme Court in *Morales* noted that "the question of what legislative adjustments 'will be held to be of sufficient moment to transgress the constitutional prohibition' *must* be a matter of 'degree.'" 514 U.S. at 509, 115 S.Ct. 1597 (quoting *Beazell v. Ohio*, 269 U.S. 167, 171, 46 S.Ct. 68, 70 L.Ed. 216 (1925))(emphasis in original).

Petitioner has not identified any disadvantage arising from biennial rather than annual hearings. His claim that he has been disadvantaged is speculative at best. The Commission, after considering the severity and brutality of his offense, decided that Petitioner is not suitable for parole until he has served fifteen additional years in custody.[15] Under these circumstances, where there is no reasonable probability that Artis will be deemed suitable for parole at any point substantially before his fifteen year reconsideration date, he has not been prejudiced. Therefore, there is no violation of the ex post facto prohibition in this case. *See Romey v. Vanyur*, 9 F.Supp.2d 565, 572 (E.D.N.C.1998) (change of military prisoner to Bureau of Prisons ("BOP") custody, by reason of which he became subject to Commission's parole jurisdiction, did not increase his punishment; court stated that "it is unclear that a delay in a parole hearing constitutes punishment at all").

Moreover, if Petitioner's circumstances were to change substantially, he would still have the opportunity to present his changed circumstances to the Commission for its consideration, in the form of a motion to reopen the parole process for new favorable information. *See* 28 C.F.R. § 2.28(a).[16] This regulation provides Petitioner with the potential for relief and precludes speculation as to whether he might be denied deserved relief while he waits for his biennial parole hearing. (Resp't's Br. At 11).

### CONCLUSION

For the reasons stated above, Mr. Artis's petition for a writ of habeas corpus

---

14. 10 U.S.C. § 858(a), *supra* note 7.

15. *See supra* note 6.

16. 28 C.F.R. § 2.28 Reopening of Cases provides that:
(a) Favorable information. Notwithstanding the appeal procedures of § 2.26, the appropriate Regional Commissioner may, on his own motion, reopen a case at any time upon the receipt of new information of substantial significance favorable to the prisoner. The Regional Commissioner may then order a new institutional hearing on the next docket, or reverse or modify the decision.

pursuant to 28 U.S.C. § 2241 will be denied.